IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY L. POMBERT,

    Plaintiff,

      v.

GLOCK, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:15-CV-723-TWT

## OPINION AND ORDER

This is a malicious prosecution and RICO action. The Plaintiff Jeffrey L. Pombert claims that the Defendants orchestrated a malicious prosecution of him to further their purported criminal enterprise and racketeering activity. It is before the Court on the Defendant James M. Deichert's Motion to Dismiss [Doc. 22], the Defendant Robert T. Core's Motion to Dismiss [Doc. 24], and the Defendants Consultinvest, Inc., Glock, Inc., and John F. Renzulli's Motion to Dismiss [Doc. 23 & 25]. For the reasons set forth below, the Defendant James M. Deichert's Motion to Dismiss [Doc. 22] is GRANTED, the Defendant Robert T. Core's Motion to Dismiss [Doc. 24] is GRANTED in part and DENIED in part, and the Defendants

Consultinvest, Inc., Glock, Inc., and John F. Renzulli's Motion to Dismiss [Doc. 23 & 25] is GRANTED in part and DENIED in part.

## I. Background

This case arises out of a supposedly lengthy and complicated racketeering scheme that eventually led to the allegedly malicious prosecution of the Plaintiff. The Defendant Glock, Inc. is one of the most profitable firearms distributors in the world.[1] With its corporate headquarters in Smyrna, Georgia, Glock, Inc. sells firearms manufactured by Glock Ges.m.b.H, an Austrian corporation.[2] Gaston Glock Sr., the founder of Glock, Inc.'s Austrian parent company, purportedly exercises complete control over Glock, Inc. and its related entities.[3] From the 1980s until 2009, Glock Sr. and Charles Ewert created and managed the "Glock Structure," a group of corporate entities that Glock Sr. and Ewert supposedly used to facilitate a racketeering scheme.[4] More specifically, the Plaintiff alleges that the Glock Structure was used to "siphon, divert, and hide monies and assets" through sham transactions and companies.[5] For

---

[1]     Compl. ¶ 38.

[2]     Id. ¶ 39.

[3]     Id. ¶ 16.

[4]     Id. ¶¶ 44, 48-49.

[5]     Id. ¶¶ 45, 53, 61.

example, the Defendant Consultinvest, a Georgia corporation, is a real estate holding company that allegedly collects fraudulent rents from other Glock entities.[6]

Ewert's relationship with Glock Sr. ended in the summer of 1999 when Glock Sr. was assaulted during a failed assassination attempt.[7] Ewert was implicated in the assassination plot.[8] Ewert and Glock Sr. then became embroiled in a legal battle over control of the Glock Structure. To assist in his legal battle with Ewert and to guide the Glock Structure through impending legal and tax investigations, Glock Sr. hired James R. Harper, III.[9] Harper negotiated his fees with and submitted all of his bills for the investigation to Paul Jannuzzo, a long-time Glock, Inc. attorney.[10] Harper hired "over a dozen lawyers, accountants, security personnel" to assist him, forming an extensive investigation team.[11] In 2001, Harper retained the Plaintiff to be part of his

---

[6] Id. ¶ 59.

[7] Id. ¶ 68.

[8] Id. ¶ 69.

[9] Id. ¶¶ 72, 75.

[10] Id. ¶¶ 86-88.

[11] Id. ¶ 78.

team.[12] The Plaintiff's primary role in the investigation was to develop a strategy to defeat Ewert's claim to Taziria, a company within the Glock Structure.[13]

Harper's investigation lasted from 2000 to 2003, during which time the team uncovered Glock Sr. and Ewert's racketeering scheme.[14] The racketeering scheme purportedly laundered "a portion of Glock Inc. revenues" through "phony marketing and 'support' companies, and transfers of addition millions through Consultinvest," violating "various laws against tax evasion, money laundering, etc."[15] Harper, concerned with Glock Sr.'s illegal activities, advised him to fully cooperate with law enforcement officials in their investigations.[16] Glock Sr. initially agreed to cooperate, but, in 2003, reversed his position and allegedly continued to conceal and perpetuate the racketeering scheme.[17] Recognizing that Glock Sr. was not going to cooperate with law enforcement authorities, Harper quit the investigation.[18] Glock Sr. then hired the Defendant James Deichert, a Georgia attorney, to instigate a criminal prosecution of

---

[12]    Id. ¶ 105.

[13]    Id.

[14]    Id. ¶¶ 96-97.

[15]    Id. ¶¶ 97-98.

[16]    Id. ¶ 127.

[17]    Id. ¶¶ 160, 163.

[18]    Id. ¶ 165.

Harper as well as two other former employees.[19] In June of 2007, the Defendants John Renzulli and Deichert filed a criminal complaint against Harper in the City of Smyrna, Georgia.[20] In support of the criminal complaint, Deichert sent a letter to the City of Smyrna that purportedly falsely accused Harper of, *inter alia*, overbilling for work that was never performed.[21] Additionally, the Plaintiff alleges that Renzulli attempted to implicate Harper through questioning Glock Sr.'s former personal attorney, Peter Manown.[22]

In 2007 or 2008, Glock Sr. hired another attorney, the Defendant Robert Core, to pursue the prosecution of both Harper and the Plaintiff.[23] The Plaintiff alleges that Core, along with Deichert and Renzulli, directed and controlled the prosecution and withheld extensive evidence from the prosecution.[24] The Plaintiff further alleges that police officer Ramon Harrison and prosecutor John Butters entered into a conspiracy with the Defendants to assist them with their extensive evidence tampering

---

[19]   Id. ¶ 173.

[20]   Id. ¶ 177.

[21]   Id. ¶ 178.

[22]   Id. ¶¶ 171, 185-86.

[23]   Id. ¶ 182.

[24]   Id. ¶¶ 191, 197.

campaign.[25] The Plaintiff was indicted on January 21, 2010. On the following day, the Plaintiff was arrested and charged with misappropriating Glock Structure funds and racketeering.[26] On March 14, 2013, the Cobb County District Attorney dropped all of the charges against Harper and the Plaintiff through a *nolle prosequi*.[27] The Plaintiff brought suit against the Defendants on March 11, 2015. He alleges that all charges against him were "based on the falsified evidence, influenced witnesses, evidence either destroyed or withheld by the Glock Structure and Enterprise, and misleading statements of Glock, Sr. and Defendants along with those of Harrison and Butters."[28] Based on these allegations, the Plaintiff asserts claims for state law and § 1983 malicious prosecution and Georgia RICO. The Defendants move to dismiss.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[29] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that

---

[25]   Id. ¶¶ 24-25, 191-92.

[26]   Id. ¶ 202; Defs. Consultinvest, et al.'s Mot. to Dismiss, Ex. A.

[27]   Compl. ¶ 206; Defs. Consultinvest, et al.'s Mot. to Dismiss, Ex. B.

[28]   Compl. ¶ 204.

[29]   Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[30] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[31] Generally, notice pleading is all that is required for a valid complaint.[32] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[33]

_____

[30]     Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[31]     See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[32]     See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[33]     See Erickson v. Pardus, 551 U.S. 89, 93 (2007).

## III. Discussion

### A.    Malicious Prosecution

#### 1.    State Law Claim

In Count II of the Complaint, the Plaintiff alleges that the Defendants[34] are liable for malicious prosecution under Georgia law.[35] Because malicious prosecution claims are not favored in Georgia, a plaintiff bringing such a claim has an especially heavy burden.[36] In order to establish a malicious prosecution claim, "a plaintiff must show the following: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage."[37]

---

[34]    The Defendants Core and Deichert incorporated by reference in their Motions to Dismiss the arguments asserted by the Defendants Glock, Inc., Consultinvest, and Renzulli in their Motion to Dismiss. Thus, the Court will first address the Defendants' joint arguments. Then, the Defendants Core, Deichert, and Renzulli will be discussed individually.

[35]    The Plaintiff also asserts a claim for false arrest. An action for false arrest is barred, however, if an arrest is carried into prosecution; an action for malicious prosecution is then the exclusive remedy. See Perry v. Brooks, 175 Ga. App. 77, 78 (1985). Thus, the Plaintiff's false arrest claim is dismissed.

[36]    See Monroe v. Sigler, 256 Ga. 759, 761 (1987) ("It is 'the policy of the courts that malicious [-] prosecution suits are not favored. It is public policy to encourage citizens to bring to justice those who are apparently guilty.'" (quoting Day Realty Assocs. v. McMillan, 247 Ga. 561, 562 (1981))).

[37]    Dixon v. Krause, 333 Ga. App. 416, 419 (2015) (quoting McNeely v. Home Depot, Inc., 275 Ga. App. 480, 482 (2005)).

The Defendants first argue that the Plaintiff's claim fails because he cannot prove the prosecution terminated in his favor. The Defendants contend that the substance of the *nolle prosequi* demonstrates that a statute of limitations issue, which barred the prosecution from introducing material evidence, prevented the prosecutor from continuing the case, not the Plaintiff's innocence.[38] "However, the filing of a nolle prosequi by the prosecutor and dismissal of the action by the trial court constitutes prima facie a termination of the prosecution in favor of the person arrested."[39] In addition, a favorable termination can be gleaned from the prosecutor's intent not to reinstate the prosecution.[40] Here, based on the *nolle prosequi*, it is clear that the prosecutor does not intend to reinstate the Plaintiff's prosecution. Thus, the *nolle prosequi* coupled with the prosecutor's intent not to reinstate the case is sufficient evidence that the prosecution terminated in the Plaintiff's favor. To be sure, in the cases cited by the Defendants, the Georgia courts held a *nolle prosequi* obtained through compromise did not constitute a prosecution terminating in the plaintiff's

---

[38]     Defs. Consultinvest, et al.'s Mot. to Dismiss, Ex. B.

[39]     Bailey v. General Apartment Co., 139 Ga. App. 713, 714  (1976).

[40]     See Vadner v. Dickerson, 212 Ga. App. 255, 256-57 (1994) (holding a prosecution terminated in the plaintiff's favor because the original case was dismissed for lack of venue, and the prosecutor voluntary abandoned the prosecution by failing to reinstate the prosecution).

favor.[41] But that is not the Plaintiff's situation; here, the prosecutor unilaterally chose not to continue to prosecute the Plaintiff. Consequently, these cases do not aid the Defendants' argument.

The Defendants next contend that the Plaintiff has failed to allege that probable cause did not exist for each count of his indictment. Whether probable cause existed for a plaintiff's prosecution is the gravamen of a malicious prosecution claim.[42] "Probable cause is absent when the circumstances would satisfy a reasonable person that the accuser had no ground for proceeding except a desire to injure the accused."[43] "Although evidence of an indictment is not conclusive, it is prima facie evidence of probable cause which shifts the burden to the plaintiff 'to come forward with specific facts tending to show that probable cause did not exist for his arrest . . . .'"[44] However, in order for the allegedly malicious prosecutor to be protected by the grand jury's indictment, "the prosecutor 'must make a fair, full and complete statement of the facts

---

[41]    See Gray v. Dental One Assocs., Inc., 269 Ga. App. 888, 889 (2004); McDaniel v. Yearwood, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *14 (N.D. Ga. Feb. 16, 2012).

[42]    Tate v. Holloway, 231 Ga. App. 831, 833 (1998) (quoting Wal-Mart Stores v. Blackford, 264 Ga. 612, 613 (1994)).

[43]    K-Mart Corp. v. Coker, 261 Ga. 745, 746 (1991).

[44]    Tate, 231 Ga. App. at 834 (quoting Smith v. Trust Co. Bank, 215 Ga. App. 413, 416 (1994)).

as they exist. He is not relieved if he conceals facts, nor if he distorts facts, nor if he is negligent in ascertaining facts.'"[45]

The Plaintiff has alleged specific facts that indicate the Defendants distorted and concealed facts to create the misconception that Harper overbilled the Defendants and, therefore, stole from them. Specifically, the Plaintiff alleges in his Complaint that:

> [a]ll of the charges against Plaintiff were fabricated based on the falsified evidence, influenced witnesses, evidence either destroyed or withheld by the Glock Structure and Enterprise, and misleading statements of Glock, Sr. and Defendants along with those of Harrison and Butters, including, without limitation: (a) falsified records of the terms of Harper's engagement with Glock Sr. and the Glock Structure; (b) selective review of Harper's bills and payments against these bills; and (c) double-counting funds paid against Harper's bills as Glock Structure money.[46]

At the pleading stage, these are sufficient allegations that the Defendants instigated a malicious prosecution of the Plaintiff. Accordingly, the Plaintiff has adequately alleged facts that demonstrate the indictment lacked probable cause.

---

[45] <u>Fleming v. U-Haul Co. of Ga.</u>, 246 Ga. App. 681, 683 (2000) (quoting <u>Hicks v. Brantley</u>, 102 Ga. 264, 273 (1897)); <u>see also</u> <u>Perry v. Brooks</u>, 175 Ga. App. 77, 79 (1985) ("An indictment, if procured on false testimony, is no evidence whatsoever of probable cause."); <u>Horne v. J.H. Harvey Co.</u>, 274 Ga. App. 444, 448 (2005) ("No probable cause exists if a defendant 'knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts.'" (quoting <u>Willis v. Brassell</u>, 220 Ga. App. 348, 353 (1996))).

[46] Compl. ¶ 204.

In response, the Defendants contend that there was, in fact, probable cause for count 7 of the indictment. Specifically, the Defendants argue that count 7 does not rest on the notion that Harper stole funds from the Defendants. Rather, they argue that count 7 was based solely on the Plaintiff supposedly stealing funds from his attorney trust account, "without any allegation that the funds had been stolen from Harper's clients."[47] And because there was probable cause for count 7, the Defendants assert, the Plaintiff is precluded from bringing a malicious prosecution claim on the other counts. The Court disagrees. Count 7 of the indictment, like the other charges, is a theft-by-taking charge in which the Plaintiff and Harper were jointly indicted for misappropriating funds from Glock.[48] In his Response Brief, the Plaintiff states that the entire theory of the indictment was that the Plaintiff's funds were unearned, so that when the Plaintiff withdrew funds from his attorney trust account, which he claims he earned, he was actually stealing from the Defendant.[49] Like the other claims in the indictment, therefore, count 7 of the indictment is based on the Defendants' allegedly false assertion that the Plaintiff and Harper were stealing money from Glock. Viewing these assertions as true – as the Court must – they are sufficient to suggest that the

---

[47]     Defs. Consultinvest, et al.'s Reply Br., at 4.

[48]     Defs. Consultinvest, et al.'s Mot. to Dismiss, Ex. A, at 24.

[49]     Pl.'s Resp. Br. in Opp'n to Defs. Consultinvest, et al.'s Mot. to Dismiss, at 9.

prosecution lacked probable cause for count 7. Consequently, the Defendants' motion to dismiss is denied in this respect.

### 2.    Section 1983 Claim

In Count I of the Complaint, the Plaintiff asserts that the Defendants' allegedly malicious prosecution was in violation of the Fourth Amendment.[50] The Eleventh Circuit "unequivocally has identified malicious prosecution to be a constitutional tort that is cognizable under § 1983."[51] "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."[52] The elements of a common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present

---

[50]    The Plaintiff also asserts that the Defendants' allegedly malicious prosecution infringed on his substantive due process rights under the Fourteenth Amendment. However, in Albright v. Oliver, the Supreme Court foreclosed the possibility of analyzing a malicious prosecution claim under substance due process. See 510 U.S. 266, 271 (1994) (holding a prosecution without probable cause should be analyzed under the Fourth Amendment, not substantive due process). Thus, the Plaintiff's § 1983 claim under the Fourteenth Amendment should be dismissed.

[51]    Uboh v. Reno, 141 F.3d 1000, 1002-03 (11th Cir. 1998).

[52]    Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003).

defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[53]

The Defendants make multiple arguments for why the Plaintiff's § 1983 malicious prosecution claim should be dismissed. First, the Defendants argue that the Plaintiff's claim fails for the same reasons that his state law malicious prosecution claim fails. However, as the noted above, the Plaintiff has adequately alleged that there was a lack of probable cause for each count of the indictment and that the prosecution terminated in his favor. Thus, the Defendants' arguments are rejected for the same reasons.

Second, the Defendants argue that they are not liable under § 1983 because they were not acting under color of state law. In order to hold private actors liable for unconstitutional actions under § 1983, the private actors must be acting under color of state law.[54] "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."[55] "However, where a private party is 'jointly engaged' with government officials in the challenged action, that private party may

---

[53]   Id. at 882.

[54]   Nelson v. Campbell, 541 U.S. 637, 643 (2004).

[55]   Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).

be considered a state actor and may be liable under § 1983."[56] This is referred to as a "conspiracy" theory of § 1983 liability.[57] To demonstrate a conspiracy, "the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons."[58] The Plaintiff is not required to demonstrate a "smoking gun,"[59] but the Plaintiff must show some evidence that the private actor and state actor "'reached an understanding' to deny the plaintiff his or her rights."[60] A private actor does not act under color of state law by simply eliciting action from a state actor.[61]

Here, the Plaintiff alleges that the Defendants were acting under the color of state law because they joined in a conspiracy with the state actors Harrison and Butters to prosecute the Plaintiff. Specifically, the Plaintiff asserts that Harrison and Butters regularly communicated with the Defendants prior to and after his indictment, that Harrison and Butters were aware of the Defendants influencing evidence, and that

---

[56]     McDaniel v. Smith, No. CV 507-079, 2009 WL 3151196, at *8 (S.D. Ga. Sept. 30, 2009) (citing Dennis v. Sparks, 449 U.S. 24, 28 (1980)).

[57]     Id.

[58]     Harvey, 949 F.2d at 1133.

[59]     Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002).

[60]     NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990).

[61]     Dye v. Radcliff, 174 Fed. App'x 480, 482-83 (11th Cir. 2006).

Harrison and Butters helped facilitate the Defendants' actions.[62]  As examples of Harrison and Butters's involvement with the Defendants, the Plaintiff alleges, *inter alia*, the following facts: (1) a June 9, 2008 e-mail between Core, Butters, and Harrison in which Core suggests that the charges against the Plaintiff were weak;[63] (2) Core's instruction to Harrison and Butters to transfer records to the Defendants and Harrison and Butters's compliance with this order;[64] (3) e-mails from May 2009 to January 2010 between Core, Butters, and Harrison discussing drafts of the Plaintiff's indictment;[65] and (4) that the Defendants and Harrison and Butters worked together to alter evidence of Harper's billing.[66] Viewing these allegations in a light most favorable to the Plaintiff, they suggest that the Defendants went beyond merely soliciting government action. They suggest that the Defendants reached an understanding with Harrison and Butters to maliciously prosecute the Plaintiff and that the Defendants assisted in the exercise of Harrison and Butters's authority.

---

[62]     Compl. ¶¶ 200-01, 204, 207.

[63]     Id. ¶ 207.

[64]     Id.

[65]     Id.

[66]     Id. ¶¶ 199, 201.

Consequently, the Court finds that the Plaintiff has sufficiently alleged facts that suggest a conspiracy existed.

Nevertheless, the Defendants argue that the Plaintiff has failed to demonstrate a conspiracy existed because the Plaintiff did not assert facts that support a reason why Harrison and Butters would enter into a conspiracy. But the Plaintiff is not required to plead reasons why Harrison and Butters would want to conspire with the Defendants. The Plaintiff must only allege that there was an understanding between the state actors and the Defendants.[67] The Defendants then contend that there is a reasonable, alternative explanation for Harrison's and Butters's actions: they were simply exercising their independent professional obligation to prosecute allegations of criminal conduct. The facts as they develop may well demonstrate that Harrison and Butters were simply exercising their prosecutorial duties. However, at the present stage of the litigation, the Court must accept the Plaintiff's allegations as true. And the Plaintiff's allegations sufficiently suggest a conspiracy between the Defendants and Harrison and Butters to maliciously prosecute him.

---

[67]    See Rowe v. City of Fort Lauderdale, 279 F.3d 1271,1283-84 (11th Cir. 2002) ("The plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants." (citation omitted)).

Next, the Defendants argue that the Plaintiff's § 1983 claim fails because the individual Defendants are absolutely immune from civil liability for a conspiracy to falsify grand jury testimony. The Defendants cite <u>Rehberg v. Paulk</u>[68] to support their argument. In <u>Rehberg</u>, the Supreme Court held that grand jury witnesses receive absolute immunity.[69] The Court further held that absolute immunity could not be circumvented "by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."[70] Thus, because the Plaintiff's claim is based on Harrison's grand jury testimony, the Defendants contend, the Defendants should be absolutely immune from § 1983 liability. The Defendants read <u>Rehberg</u> too broadly. First, in <u>Rehberg</u>, the plaintiff's claim was based exclusively on grand jury testimony.[71] And the Court recognized that its holding was limited to grand jury testimony, stating: "[o]f course, we do not suggest that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement

---

[68]   132 S. Ct. 1497 (2012).

[69]   <u>Id.</u> at 1510.

[70]   <u>Id.</u> at 1506.

[71]   <u>Id.</u> at 1501.

officials who falsify affidavits and fabricate evidence concerning an unsolved crime."[72] Here, the Plaintiff's assertion that the Defendants influenced and concealed evidence goes beyond Harrison's grand jury testimony. It tends to demonstrate that other evidence was fabricated or destroyed prior to the Plaintiff's indictment. Moreover, the Court, in <u>Rehberg</u>, did not state that absolute immunity extends to every other actor in a conspiracy. The Court's opinion centered around whether a grand jury witness in a grand jury proceeding enjoyed absolute immunity,[73] not whether his or her supposed co-conspirators also enjoyed absolute immunity because of the witness's grand jury testimony. Thus, the Defendants do not receive absolute immunity because of Harrison's grand jury testimony.

Finally, the Defendants argue that the Court should dismiss any § 1983 claims against the Defendants Glock, Inc. and Consultinvest because, as corporate entities, they can only act through their agents, and § 1983 does not allow for respondeat superior or vicarious liability. The Plaintiff responds by arguing that Glock, Inc. and Consultinvest maintained corporate policies to bring about his malicious prosecution. In order to hold a corporation liable, a plaintiff must prove a "policy, custom or action

---

[72]     <u>Id.</u> at 1507 n.1 (emphasis in original) (citations omitted).

[73]     <u>See</u> <u>id.</u> at 1505 ("The factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses.").

by those who represent official policy that inflicts injury actionable under § 1983."[74] To that end, the Plaintiff argues that policies existed because the corporations funded the malicious prosecution, retained outside counsel to execute the malicious prosecution, housed the prosecution's evidence at a Glock warehouse, and used their highest officers to influence key witnesses.[75] But this argument is insufficient in the absence of specific factual allegations in the Complaint. It tends to demonstrate that Glock Sr. instructed and funded several employees of the Glock Structure to maliciously prosecute the Plaintiff, not an official corporate policy. Thus, the Plaintiff has failed to allege that the Defendants Glock, Inc. and Consultinvest maintained "'policy statement[s], ordinance[s], regulation[s], or decision[s] officially adopted and promulgated'" by the corporations' officers.[76]

### B.   Georgia RICO

The Plaintiff also asserts several claims under the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act.[77] The Defendants argue, *inter alia*, that the

---

[74]   Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 976 (8th Cir. 1993) (citing Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978)).

[75]   Pl.'s Resp. Br. in Opp'n to Defs. Consultinvest, et al.'s Mot. to Dismiss, at 20.

[76]   Adcock v. Baca, 157 Fed. App'x 118, 120 (11th Cir. 2005) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988)).

[77]   O.C.G.A. § 16-14-1, et seq.

Plaintiff has failed to adequately allege the elements of a RICO claim. O.C.G.A. § 16-14-4(a) states that it is "unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."[78] O.C.G.A. § 16-14-4(b) states that it is "unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." [79] Under O.C.G.A. § 16-14-3(5)(A), "'[r]acketeering activity' means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under" certain enumerated laws.[80] A "pattern" of racketeering activity means:

> [e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided . . . that the last of such acts occurred within four years . . . after the commission of a prior act of racketeering activity.[81]

---

[78]   O.C.G.A. § 16-14-4(a).

[79]   O.C.G.A. § 16-14-4(b).

[80]   O.C.G.A. § 16-14-3(5)(A).

[81]   O.C.G.A. § 16-14-3(4)(A).

Thus, "to state a claim under the civil RICO statute, a claimant must allege at least two predicate acts of conduct that are crimes chargeable by indictment under certain laws of the state of Georgia or the United States."[82] Malicious prosecution is not a predicate act under the Georgia RICO statute.

Additionally, RICO claims "are essentially a certain breed of fraud claims, [and] must be pled with an increased level of specificity."[83] Thus, a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."[84] Moreover, a plaintiff may not "lump[] together" the defendants; a plaintiff must make specific allegations against each defendant.[85] The specificity

---

[82]     Dalton v. State Farm Fire and Cas. Co., No. 1:12-CV-02848-RWS, 2013 WL 1213270, at *3 (N.D. Ga. Mar. 22, 2013).

[83]     Ambrosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1316 (11th Cir. 2007).

[84]     Id. at 1316-17.

[85]     Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997).

requirements also protect defendants against speculative actions which use discovery as a "fishing expedition" in an attempt to find evidence that supports the claims.[86]

Here, the Defendants contend that the Plaintiff has failed to allege at least two predicate acts. The Court agrees. For the first predicate act, the Plaintiff alleges that the Defendants tampered with evidence by concealing or destroying certain emails and documentary evidence. Under O.C.G.A. § 16-10-94, "[a] person commits the offense of tampering with evidence when . . . he knowingly destroys, alters, conceals, or disguises physical evidence."[87] However, the Plaintiff's allegation fails to meet the pleading standards for a RICO claim. The Plaintiff does not state which defendant withheld which piece of evidence. Rather, the Plaintiff uses group pleading to allege that the Glock Enterprise withheld or destroyed the evidence. And the Plaintiff may not "simply 'lump together' all of the Defendants in their allegations of fraud."[88]

In addition to evidence tampering, the Plaintiff alleges the predicate act of making threats to prevent information on criminal activity from being communicated

---

[86]    United States ex rel. Clausen v. Laboratory Corp. of Am., Inc., 290 F.3d 1301, 1308 (11th Cir. 2002).

[87]    O.C.G.A. § 16-10-94.

[88]    Brooks, 116 F.3d at 1381 (quoting Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994)).

to law enforcement or the courts.[89] In support of this claim, the Plaintiff alleges that Core sought the tax returns of a witness, Paul Phelan, from Butters "so that he could 'break' him after Phelan made statements favorable to Harper and Plaintiff's defense during an interview with Officer Harrison."[90] However, as the Defendants correctly point out, this allegation fails because the Plaintiff does not specifically state that Core communicated his threat to Phelan. Moreover, Core's alleged threat against Phelan came after Phelan had already spoken with Harrison and given statements favorable for the Plaintiff. Thus, Core's alleged threat did not prevent Phelan from "[r]eporting in good faith to a law enforcement officer" or "attending or testifying in an official proceeding."[91]

Finally, the Plaintiff asserts three predicate acts under O.C.G.A. § 16-10-93. The Plaintiff first alleges that Core directed Harrison and Butters to influence the testimony of "the State's supposed expert witness,"[92] and that Core influenced Emmanuel Mathis's testimony by placing him on the Glock payroll and informing

---

[89]    See O.C.G.A. § 16-10-32.

[90]    Compl. ¶ 207(g).

[91]    O.C.G.A. § 16-10-32.

[92]    Compl. ¶ 207(f).

him about "acts he did previously did not know about."[93] However, with regard to the prosecution's expert witness, the Plaintiff merely alleges that Core told Harrison and Butters to tell the witness not to unilaterally disclose Core's involvement with the witness's preparation, and that the witness should not divulge any communications between Harrison, Butters, and Core because such conversations were protected by the work product doctrine and attorney-client privilege.[94] These allegations do not amount to a violation of O.C.G.A. § 16-10-93(b)(1)(A). An attorney does not commit a crime by advising a witness not to divulge privileged information. With regard to Mathis, the Complaint does not allege that Core placed Mathis on the Glock payroll to influence his testimony.[95] Moreover, Core's statement that Mathis "completely understands the case, to include those acts he did previously did not know about" does not amount to persuading Mathis by means of corruption or engaging in misleading conduct. The Plaintiff then alleges that the Defendant Renzulli violated O.C.G.A. § 16-10-93(b)(1)(B)(I) by attempting to implicate Harper during Peter Manown's proffer. Under O.C.G.A. § 16-10-93(b)(1)(B)(I), it is illegal to threaten a witness into

---

[93]    Id. ¶ 207(k).

[94]    See id. ¶ 207(f).

[95]    See id. ¶ 207(k).

withholding testimony.[96] Yet, the Plaintiff does not allege that Renzulli's actions caused Manown to withhold any testimony. For the Plaintiff's final predicate act, he alleges that Core, along with the Glock Enterprise, prepared false accountings and a misleading chart for grand jury testimony in violation of O.C.G.A. § 16-10-93(b)(1)(B)(ii). While this allegation may appear sufficient on its face, it nonetheless fails because it does not allege that any of the Defendants intimidated, caused, or induced a witness to "alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding."[97] In sum, the Plaintiff has failed to allege that the Defendants committed at least two predicate acts. Thus, the Plaintiff's RICO claims should be dismissed.

### C.    Robert Core

The Defendant Core first moves to dismiss the Plaintiff's state law malicious prosecution claim against him. Core contends that the Plaintiff has failed to demonstrate that he acted in his individual capacity. In support of this argument, Core cites to <u>Perry v. Brooks</u>.[98] There, the Georgia Court of Appeals held that because two defendants "took no personal action with regard to the initiation of the prosecution"

---

[96]    O.C.G.A. § 16-10-93(b)(1)(B)(I).

[97]    O.C.G.A. § 16-10-93(b)(1)(B)(ii).

[98]    175 Ga. App. 77 (1985).

of the plaintiff, and after the initiation of the prosecution, only acted in their capacity as agents for the defendant, they could not be held personally liable for the malicious prosecution.[99] By contrast, here, Core did take part in the initiation of the Plaintiff's prosecution. Based on the Plaintiff's allegations, Core's purpose in the conspiracy was to initiate the malicious prosecution.[100] And, according to the Complaint, Core was heavily involved with Butters and Harrison in the investigation and eventual indictment of the Plaintiff.[101] Thus, at this stage in the proceeding, the Court is unwilling to conclude that Core cannot be held personally liable for his purported involvement. Core then argues that he cannot be held personally liable because the Plaintiff has failed to allege that he acted with malice. But "[m]alice sufficient to sustain a recovery may be inferred from the want of probable cause."[102] Here, the Plaintiff alleges a lack of probable cause because, *inter alia*, Core falsified evidence. Accepting the Plaintiff's allegations as true, the Plaintiff has sufficiently alleged that Core "recklessly failed to present [the facts] fully and fairly" to the State when

---

[99]   Id. at 79.

[100]   Compl. ¶ 182.

[101]   Id. ¶¶ 199, 201, 207(f), 207(k), 207(q).

[102]   Fleming v. U-Haul Co. of Ga., 246 Ga. App. 681, 684 (2000).

initiating the Plaintiff's prosecution.[103] This is sufficient to infer a want of probable cause, and thus malice in Core's actions.

Next, Core moves to dismiss the Plaintiff's § 1983 claim against him, arguing that he is entitled to either absolute or qualified immunity. More specifically, Core states that he is entitled to absolute immunity for his role in the procurement of the Plaintiff's indictment and qualified immunity for his role in the investigation. In support of his argument, Core primarily relies on Filarsky v. Delia, a case in which the Supreme Court addressed whether a private attorney working for the government was eligible for qualified immunity.[104] In Filarsky, the City of Rialto, California hired the defendant Filarsky, an experienced employment law attorney, to investigate a city employee's potentially improper extended absence.[105] The city employee responded by filing a § 1983 claim against the city, several city employees, and Filarsky.[106] Holding that Filarsky was eligible for qualified immunity, the Supreme Court first concluded that, based on the common law when § 1983 was enacted, "immunity under § 1983 should not vary depending on whether an individual working for the

---

[103]   See id. at 683.

[104]   132 S. Ct. 1657 (2012).

[105]   Id. at 1660.

[106]   Id. at 1661.

government does so as a full-time employee, or on some other basis."[107] The Court then weighed public policy considerations and ultimately concluded that qualified immunity should be available to Filarsky. The Court stated that making qualified immunity available to Filarsky helped the interest of "avoiding 'unwarranted timidity' on the part of those engaged in the public's business."[108] The Court also noted that the "government's need to attract talented individuals is not limited to full-time public employees."[109]

Here, Core contends that his involvement in the investigation and indictment of the Plaintiff is analogous to that of the attorney in <u>Filarsky</u>. Core states that Harrison and Butters sought his support because of his specialized skills as an attorney and former FBI agent. Moreover, Core states that the nature of the activities he performed is more important than whether he was employed by Glock, Inc. and Consultinvest. The Court disagrees. Unlike the attorney in <u>Filarsky,</u> Core's role was more like a complaining witness than an assistant to the prosecution. The Plaintiff alleges that Core was hired by Glock, Inc. and Consultinvest, the complaining witnesses, "to manage, supervise, and control Harrison in pursuit of the false arrest

---

[107]   <u>Id.</u> at 1665.

[108]   <u>Id.</u>

[109]   <u>Id.</u>

and prosecution of Harper and Plaintiff."[110] Historically, complaining witnesses are not entitled to immunity. The Supreme Court reiterated this point in <u>Wyatt v. Cole</u>: "although public prosecutors and judges were accorded absolute immunity at common law, such protection did not extend to complaining witnesses who . . . set the wheels of government in motion by instigating a legal action."[111] Moreover, in ruling that the attorney in <u>Filarsky</u> was eligible for qualified immunity, the Supreme Court did not find its opinion in <u>Wyatt</u> to be to the contrary.[112] Instead, the Court noted that qualified immunity should not be extended to individuals "using the mechanisms of government to achieve their own ends."[113] Accepting the Plaintiff's allegations as true, the Plaintiff has sufficiently alleged that Core conspired with the state actors to achieve Glock, Inc.'s and Consultinvest's goals, not for "enhancing the public good."[114] Thus, at the present stage, the Court concludes that Core may not invoke either absolute or qualified immunity. Core's Motion to Dismiss is denied in this respect.

---

[110]    Compl. ¶ 182.

[111]    504 U.S. 158, 164-65 (1992) (citation omitted).

[112]    <u>Filarsky</u>, 132 S. Ct. at 1666.

[113]    <u>Id.</u> at 1667.

[114]    <u>Id.</u>

**D.    John Renzulli**

The Defendant Renzulli moves to dismiss the Plaintiff's malicious prosecution claims against him. Renzulli contends that the Plaintiff has failed to demonstrate that his actions proximately caused the Plaintiff's injuries, noting that all of the Plaintiff's allegations against him involve "reporting criminal activity by people other than Pombert."[115] The Plaintiff responds by arguing that Renzulli's actions, even if directed at Harper, aided the conspiracy to maliciously prosecute him. In support of his argument, the Plaintiff cites two allegations – Renzulli hiring Core to control Harrison and Renzulli questioning Manown in order to implicate Harper. These allegations, however, are insufficient. First, the Complaint alleges that Glock Sr., Glock, Inc., and/or Consultinvest hired Core, not Renzulli.[116] Second, the Plaintiff's allegation that Renzulli attempted to implicate Harper during Manown's proffer fails to demonstrate how the attempted implication caused his malicious prosecution.[117] All the other allegations against Renzulli are in the form of group pleading, which do not meet the

---

[115]    Defs. Consultinvest, et al.'s Mot. to Dismiss, at 46.

[116]    See Compl. ¶ 182 ("In late 2007 or early 2008, Glock Sr., Glock Inc., and/or Consultinvest hired Core, another attorney, to manage, supervise, and control Harrison in pursuit of the false arrest and prosecution of Harper and Plaintiff.").

[117]    Id. ¶¶ 186-87.

pleading standard for a civil rights conspiracy.[118] Thus, the Plaintiff has failed to adequately allege that Renzulli's actions violated any right protected by § 1983 or that they caused his malicious prosecution. Consequently, the Plaintiff's state law malicious prosecution claim and § 1983 claim against Renzulli should be dismissed.

### E.   James Deichert

Like Renzulli, the Defendant Deichert also contends that the Plaintiff has failed to allege that any of his actions caused the malicious prosecution. Deichert states that the Plaintiff has not alleged sufficient facts that prove he conspired with the state actors, nor that he acted with malice towards the Plaintiff. In response, the Plaintiff points to his allegation that Deichert instigated the investigation of Harper by sending the "Smyrna Letter." The Plaintiff contends that "[t]he falsehoods in the Smyrna Letter that Deichert personally sent at Glock's behest points to his personal involvement and a total lack of probable cause. The Plaintiff is entitled to the inference of Deichert's culpability of malice at the pleading stage."[119] But, as Deichert correctly points out, the Smyrna Letter contains no information about Pombert. Indeed, "the subject line of the Smyrna Letter recommends prosecution for four

---

[118]    See Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed.").

[119]    Pl.'s Resp. Br. in Opp'n to Def. Deichert's Mot. to Dismiss, at 16.

individuals, none of whom is Pombert, and Pombert is not mentioned a single time within the body of the Letter."[120] Outside of the Symrna Letter, the Plaintiff's allegations regarding Deichert are in the form of group pleading, which, as noted above, do not satisfy the conspiracy pleading standards. The Plaintiff, therefore, has not sufficiently alleged that Deichert instigated in his supposedly malicious prosecution. As a result, the Plaintiff's state law malicious prosecution and § 1983 claims against Deichert fail.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendant James M. Deichert's Motion to Dismiss [Doc. 22], GRANTS in part and DENIES in part the Defendant Robert T. Core's Motion to Dismiss [Doc. 24], and GRANTS in part and DENIES in part the Defendants Consultinvest, Inc., Glock, Inc., and John F. Renzulli's Motion to Dismiss [Doc. 23 & 25].

---

[120]     Def. Deichert's Reply Br., at 4.

SO ORDERED, this 16 day of March, 2016.


                            /s/Thomas W. Thrash
                            THOMAS W. THRASH, JR.
                            United States District Judge