UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY L. POMBERT,      :
      :
    Plaintiff,      :
      :   Civil Action File No.
v.      :   1:15-cv-00723-TWT
      :
GLOCK, INC., CONSULTINVEST,  :
INC., ROBERT T. CORE,      :
JAMES M. DEICHERT, and      :
JOHN F. RENZULLI,      :
      :
    Defendants.      :

**ANSWER AND DEFENSES OF
DEFENDANT CONSULTINVEST, INC.**

Defendant Consultinvest, Inc. ("the Defendant") submits its Defenses and

Answer to Plaintiff's Complaint.  The Defendant notes at the outset that to the

extent any allegations of the Complaint relate to or otherwise refer to Count I,

Count III, Count IV, Count V of the Complaint and/or to any cause of action for

false arrest, or to John Renzulli and/or James Deichert as defendants in this action,

no response or defense is required.  Those claims and defendants have been

dismissed, or, in the case of a false arrest, were never pleaded.  In response to the

claims that have survived the Court's Rule 12(b)(6) ruling, Defendant answers as

follows:

1431853.1

## DEFENSES

The Defendant asserts the following defenses to the Complaint, but does not assume the burden of proof on any such defense except as required by applicable law.  The Defendant further reserves its right to assert additional defenses and/or to supplement its Defenses and Answer as permitted by this Court and the Federal Rules of Civil Procedure.

### *FIRST DEFENSE*

Subject matter jurisdiction is lacking in this Court over some or all of the conduct alleged in the complaint.

### *SECOND DEFENSE*

Plaintiff's claims are barred to the extent they rely on alleged conduct that took place entirely outside the United States and the State of Georgia, and over which this Court has no subject matter jurisdiction.

### *THIRD DEFENSE*

The Complaint fails to plead its allegations of fraud and deception with particularity as required and Fed. R. Civ. P. 9(b).

### *FOURTH DEFENSE*

Plaintiff's RICO claims are barred by the applicable statutes of limitations.

1431853.1

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH DEFENSE

Plaintiff's claims for any equitable relief are barred, in whole or in part, by the doctrine of laches.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

## EIGHTH DEFENSE

Plaintiff's claims for any equitable relief are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Defendant acted in good faith.

## TENTH DEFENSE

Plaintiff's claims are barred to the extent the Defendant acted pursuant to any applicable privilege.

1431853.1

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Defendant's alleged conduct did not actually or proximately cause Plaintiff to suffer any cognizable harm.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any alleged damage is speculative and not recoverable under the law.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate damages.

## FOURTEENTH DEFENSE

Plaintiff's claim for pre-judgment interest does not comply with the applicable statute or statutes.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages were the result of one or more intervening or superseding causes, or were caused by the acts and/or failure to act of persons or entities other than the Defendant, including, but not limited to, acts of the Plaintiff or the state actors who investigated and prosecuted the Plaintiff.

1431853.1

*SIXTEENTH DEFENSE*

Plaintiff's claims are barred to the extent they are filed in violation of the Georgia Anti-SLAPP statute, O.C.G.A. § 9-11-11.1.

*SEVENTEENTH DEFENSE*

Plaintiff's claims are barred to the extent they are filed in violation of the *Noerr-Pennington* Doctrine.

*EIGHTEENTH DEFENSE*

Plaintiff's claims are barred to the extent the claims violate the Defendant's constitutional rights, including the right to free speech, the right to petition the government for redress of grievances, and the right of access to the Courts.

*NINETEENTH DEFENSE*

Plaintiff's claims to recover any payment for services or expenses are barred to the extent that that any such debts were forgiven.

*TWENTIETH DEFENSE*

Without admitting that Plaintiff suffered damages in any amount, or that any defendant is liable for any such damages, the Defendant asserts that any liability, including that of any other responsible persons (named or unnamed) should be apportioned according to their relative degrees of fault, and any alleged liability of the Defendant reduced accordingly. *See* O.C.G.A. § 51-12-33(c).

1431853.1

*TWENTY-FIRST DEFENSE*

Plaintiff's claims for punitive damages are barred, in whole or in part, by the Due Process Clauses of the United States Constitution and/or the Constitution of the State of Georgia.

*TWENTY-SECOND DEFENSE*

Plaintiff's claims are barred because there was probable cause for Plaintiff's prosecution.

The Defendant reserves the right to assert additional defenses available under any applicable State or federal law.

**ANSWER**

In further response to the Complaint's numbered allegations, Defendant Glock, Inc. answers as follows:

## I.     NATURE OF THE ACTION

**1.**

**This is an action by Jeffrey L. Pombert for damages arising from a malicious prosecution instigated and orchestrated by Defendants and their agents or associates in furtherance of a criminal enterprise and pattern of racketeering activity. The purpose of the malicious prosecution of Plaintiff was to silence, punish, and discredit him in order to conceal an ongoing racketeering scheme spanning decades and, literally, the globe. To that end, Defendants engaged in a wide-ranging campaign of evidence tampering, falsification of evidence, and improper influencing of witnesses. As a direct result, Plaintiff suffered great injury.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 1 of the

Complaint.

## 2.

**Defendants, led by Gaston Glock Sr. ("Glock Sr."), designed their scheme for the purpose of punishing, discrediting, and retaliating against Plaintiff who, as part of a team of investigators led by James R. Harper, III ("Harper"), uncovered knowledge and evidence implicating Glock Inc., Consultinvest, and Glock Sr. in various unlawful schemes.**

RESPONSE:  The Defendant denies the allegations of Paragraph 2 of the

Complaint.

## 3.

**Defendants, Glock Sr., and a host of Glock-related entities were involved in certain racketeering activities that employed a tangled web of fictive legal relationships, offshore business entities, and international financial transactions ("the Glock Structure"). Upon information and belief, the object of the primary racketeering scheme was for purposes of tax evasion and/or to steal, siphon, divert, and hide monies and assets away from Glock Sr.'s familial relatives.**

RESPONSE:  The Defendant denies the allegations of Paragraph 3 of the

Complaint.

## 4.

**The Glock Structure, as a matter of practice and modus operandi, disrespected and misused virtually all of the characteristic instruments of lawful commerce by documenting pretextual corporate acts, titles, contracts, and legal relationships, by issuing and paying sham invoices for transactions without economic substance, and by creating "dummy" corporate entities and structures that lacked any valid business purpose. These machinations were designed to provide Defendants, Glock Sr., and his associates with plausible deniability and the false appearance of arm's-length dealings.**

1431853.1

<u>RESPONSE:</u>  The Defendant denies the allegations of Paragraph 4 of the

Complaint.

**5.**

> **In his professional capacity as an attorney, between approximately March 2001 and March 2003, Plaintiff assisted Harper with a sensitive, complicated, and multi-faceted mission involving an internal corporate investigation, tax- and legal-compliance work, and a globe-trotting legal campaign to preserve Glock Sr.'s control over Glock Inc.'s cash-flows and its related corporate entities. In the course of the investigation, Harper uncovered evidence consistent with a pervasive racketeering scheme that had the potential to implicate Glock Sr., himself.**

<u>RESPONSE:</u>  The Defendant denies the allegations of Paragraph 5 of the

Complaint.

**6.**

> **Subsequently, the Glock Structure combined in a conspiracy to target, falsely arrest, and maliciously prosecute Plaintiff for purposes of smearing, discrediting, punishing, and falsely imprisoning him. In aid of this conspiracy, an Enterprise was formed that, over a period of years, tampered with evidence, illegally influenced witnesses, withheld material and exculpatory evidence, and fabricated false evidence for the purpose of causing injury to Plaintiff. The Defendants secured the cooperation of State Actors, who abdicated their solemn role of screening criminal complaints to shield citizens against vindictive prosecutions. What followed was a privately-financed, privately-led criminal "investigation" in which the State Actors were mere bystanders. Armed with the power of an "out-sourced" public prosecution, the Defendants used it for private vengeance.**

<u>RESPONSE:</u>  The Defendant denies the allegations of Paragraph 6 of the

Complaint.

## II.    PARTIES AND NON-PARTY STATE ACTORS

### A.    Parties

### 7.

**Plaintiff is an attorney in good standing, licensed to practice law in the State of Georgia.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 7 and, on that basis,

denies the allegations of Paragraph 7 of the Complaint.

### 8.

**Prior to his retention as part of Harper's investigative team, Plaintiff was a lawyer with a successful civil practice in complex commercial litigation. Following this engagement, Plaintiffs reputation and livelihood were smeared by an arrest and indictment based on charges that were trumped up by Glock Sr.'s proxies using phony evidence and tampered witnesses as part of a conspiracy that included state actors acting under color of state law.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of the first sentence of Paragraph 8,

and, on that basis, denies the allegations of the first sentence of Paragraph 8 of the

Complaint. The Defendant denies the remaining allegations of Paragraph 8 of the

Complaint.

### 9.

**Plaintiff has standing to bring these claims because, as described more fully herein, he is a person who sustained injury in the form of unjust arrest, malicious prosecution, as well as damage to his professional livelihood, reputation, and property by reason of Defendants' conduct. Defendants' acts**

1431853.1

of racketeering have been directed at Plaintiff and he was an intended victim of Defendants' actions.

RESPONSE:  The Defendant denies the allegations of Paragraph 9 of the

Complaint.

## 10.

Defendant Glock, Inc. ("Glock Inc.") is a corporation organized under the laws of the State of Georgia, with its principal place of business in Smyrna, Georgia.

RESPONSE:  The Defendant admits that Glock, Inc. is a Georgia corporation

located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082.

## 11.

Defendant Consultinvest, Inc. ("Consultinvest") is a corporation organized under the laws of the State of Georgia, with its principal place of business in Smyrna, Georgia.

RESPONSE:  The Defendant admits that Consultinvest, Inc. is a Georgia

corporation located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082.

## 12.

Defendant John Renzulli ("Renzulli") is a citizen of New York and a New York lawyer and a participant in the Enterprise, defined *infra*.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that John Renzulli, who is no longer a defendant, is a citizen of and lawyer

in New York.  The Defendant denies the remaining allegations of Paragraph 12 of

the Complaint.

1431853.1

**13.**

  **Defendant James Deichert ("Deichert") is a citizen of Georgia, a lawyer for Glock Sr., Glock, Inc., and Consultinvest, and a participant in the Enterprise, defined *infra*.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that James Deichert, who is no longer a defendant, is a lawyer in Georgia.

The Defendant denies the remaining allegations of Paragraph 13 of the Complaint.

**14.**

  **Defendant Robert Core ("Core") is a citizen of Virginia, a lawyer, and a participant in the Enterprise, defined *infra*.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Robert Core is a lawyer.  The Defendant denies the remaining

allegations of Paragraph 14 of the Complaint.

**B. Glock Sr.'s Controlling Influence**

**15.**

  **Glock Sr. is a citizen of the Republic of Austria.**

RESPONSE:  The Defendant admits that Gaston Glock Sr. is a citizen of the

Republic of Austria.

**16.**

  **At all times material hereto, Glock Sr. exercised ultimate control and authority over Glock Inc. and Consultinvest, such that those entities no longer had a separate mind, will, or corporate existence of their own. The corporate entities within the Glock Structure, including Glock Inc. and Consultinvest, were mere instrumentalities used by Glock Sr. to further his own interests. In substance, Defendants were mere alter egos of Glock Sr., such that it is fair to**

1431853.1

**impute the actions of Glock Sr. to Glock Inc. and Consultinvest and vice versa.**

RESPONSE:  The Defendant denies the allegations of Paragraph 16 of the

Complaint.

### 17.

**Each of the above corporate entities and others controlled by Glock Sr. comprise the Glock Structure.**

RESPONSE:  The Defendant denies the allegations of Paragraph 17 of the

Complaint.

**C.     The Enterprise**

### 18.

**Cumulatively, the Enterprise, as it is used in this Complaint, consists of Glock Inc., Consultinvest, Glock Sr., Deichert, Renzulli, and Core, all of whom were agents of Defendants Glock Inc. and Consultinvest and combined their efforts with State Actors acting under color of state law in a related and common undertaking.**

RESPONSE:  The Defendant denies the allegations of Paragraph 18 of the

Complaint.

### 19.

**The common undertaking of the Enterprise persisted over an extended period of years and employed the same or similar methods of commission of criminal acts (tampering with evidence, illegally influencing witnesses, planting false evidence, making false statements, and other unlawful acts), in connection with falsely arresting and maliciously prosecuting Plaintiff.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 19 of the

Complaint.

## 20.

**The false arrest and prosecution of Plaintiff served a larger purpose of discrediting, punishing, and ruining Plaintiff in the hopes of shielding and secreting Defendants' and Glock Sr.'s participation in certain unlawful schemes in which the Glock Structure had been involved for many years and, upon information and belief, may continue to this day.**

RESPONSE:  The Defendant denies the allegations of Paragraph 20 of the

Complaint.

## 21.

**Renzulli is a citizen of New York and a New York lawyer and a member of the Enterprise. Renzulli was employed by Glock Sr., Glock Inc., Consultinvest and/or other Glock Structure entities for the purposes of controlling and furthering the malicious prosecution of Plaintiff. Renzulli committed acts in furtherance of the goals of the racketeering Enterprise, which included, among others, to discredit and punish Plaintiff and to engineer a false arrest and indictment to aid in the concealment of Glock Sr.'s complicity in the unlawful racketeering schemes and other illegal activities that pervaded Glock Inc., Consultinvest, and other Glock entities under the control of Glock Sr.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that John Renzulli, who is no longer a defendant, is a citizen of and lawyer

in New York.  The Defendant denies the remaining allegations of Paragraph 21 of

the Complaint.

**22.**

Deichert is a citizen of Georgia, a lawyer for Glock Sr., Glock Inc. and Consultinvest, and a member of the Enterprise. Deichert was employed by Glock Sr., Glock Inc., and/or other Glock Structure entities for the purposes of controlling and furthering the malicious prosecution of Plaintiff. As part of the Enterprise, Deichert falsified records, made false statements directed to law enforcement, and committed other acts in furtherance of the goals of the Enterprise.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that James Deichert, who is no longer a defendant, is a lawyer in Georgia.

The Defendant denies the remaining allegations of Paragraph 22 of the Complaint.

**23.**

Core is a citizen of Virginia, a lawyer, and a member of the Enterprise. Core was employed by Glock Sr., Glock Inc., Consultinvest, and/or other Glock Structure entities for the purposes of controlling and furthering the malicious prosecution of Plaintiff. As part of the Enterprise, Core falsified records, created false "evidence," withheld exculpatory documents, illegally tampered with witnesses, and committed other acts in furtherance of the goals of the Enterprise.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Robert Core is a lawyer.  The Defendant denies the remaining

allegations of Paragraph 23 of the Complaint.

**24.**

State Actor Ramon Keith Harrison ("Officer Harrison") is a former police officer for the City of Smyrna, located in Cobb County, Georgia. Under color of state law, Officer Harrison conspired and had a common understanding with the Enterprise to facilitate tampering with evidence, illegally influencing witnesses, and committing other acts in furtherance of the goals of the Enterprise. But for the protection of the legal doctrine of qualified

1431853.1

14

**immunity, Officer Harrison would have been named as a defendant in this action.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ramon Keith Harrison is a former police officer and detective for the

City of Smyrna Police Department.  The Defendant denies the remaining

allegations of Paragraph 24 of the Complaint.

**25.**

**State Actor John Butters ("Butters") is a former Cobb County assistant district attorney. Under color of state law, Butters conspired and had a common understanding with the Enterprise in order to facilitate tampering with evidence, illegally influencing witnesses, and committing other acts in furtherance of the goals of the Enterprise. But for the protection of qualified immunity and/or prosecutorial immunity, Butters would have been named as a defendant in this action.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that John Butters is a former Cobb County Assistant District Attorney.  The

Defendant denies the remaining allegations of Paragraph 25 of the Complaint.

**26.**

**Each of those identified as members of the Enterprise and the State Actors intentionally played some material role in the conspiracy targeting Plaintiff regardless of whether each was aware of the roles and means employed by others.**

RESPONSE:  The Defendant denies the allegations of Paragraph 26 of the

Complaint.

1431853.1

**27.**

      The Enterprise furnished a vehicle for the commission of a pattern of racketeering activity that, as an extension of the primary racketeering activity involving the Glock Structure, had a secondary objective: targeting Plaintiff and others who had knowledge of Glock Sr. and his unlawful dealings in order to silence, punish, discredit, ruin, falsely arrest, and even falsely convict them.

RESPONSE:  The Defendant denies the allegations of Paragraph 27 of the

Complaint.

**28.**

      The Enterprise had a common purpose. Moreover, it had an ongoing structure or organization supported by personnel or associates with continuing functions or duties: lawyers operating under the pretended cloak of "attorney-client privilege"; a common source(s) of financing their efforts; relationships among those associated with the Enterprise; and longevity sufficient to sustain the Enterprise's purpose.

RESPONSE:  The Defendant denies the allegations of Paragraph 28 of the

Complaint.

**29.**

      A hierarchy existed in which Glock Sr. was the leader, while Defendants and members of the Enterprise (many of them attorneys answering to Glock Sr.) controlled and combined with the State Actors named herein to operate and manage the Enterprise's affairs and achieve its ends.

RESPONSE:  The Defendant denies the allegations of Paragraph 29 of the

Complaint.

**30.**

      The Enterprise is distinct from the pattern of the primary racketeering activity in which Glock Sr. and his trustee, Charles Ewert, presumably

1431853.1

**engaged in their joint establishment of the Glock Structure for unlawful purposes and the Enterprise is distinct from any one Defendant.**

RESPONSE:  The Defendant denies the allegations of Paragraph 30 of the

Complaint.

## III.   JURISDICTION AND VENUE

### 31.

**This Court has subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1331 (federal question) because Plaintiff's claims arise pursuant to 42 U.S.C. § 1983, et seq. (conspiracy in deprivation of constitutional civil rights).**

RESPONSE:  Paragraph 31 is a legal conclusion to which no response is required.

To the extent a response is required, the Defendant denies that Plaintiff has viable

claims under 42 U.S.C. § 1983, et seq., and on that basis denies the remaining

allegations of Paragraph 31 of the Complaint.

### 32.

**Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims arising under state law because the claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.**

RESPONSE:  Paragraph 32 is a legal conclusion to which no response is required.

To the extent a response is required, the Defendant denies that Plaintiff has viable

state law claims, and on that basis denies the remaining allegations of Paragraph 32

of the Complaint.

1431853.1

**33.**

Defendants Glock Inc. and Consultinvest are subject to the personal jurisdiction of this Court because they are organized under the laws of the State of Georgia, maintain their principal places of business in the State of Georgia and Cobb County located in the Northern District of Georgia, and committed a substantial amount of the wrongs described herein in Cobb County and the State of Georgia.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Glock, Inc. is a Georgia corporation located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082 and Consultinvest, Inc. is a Georgia corporation located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082.  The Defendant denies the remaining allegations of Paragraph 33 of the Complaint.

**34.**

Defendant Deichert is subject to the personal jurisdiction of this Court as a resident of the State of Georgia living within this federal district.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 and, on that basis, denies the allegations of Paragraph 34 of the Complaint.

**35.**

Defendants Renzulli and Core are subject to the personal jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1) and (3) because they:

(a) have regularly transacted business within the State of Georgia;

(b) committed tortious acts and omissions within the State of Georgia; and

(c) committed tortious injuries within the State of Georgia by acts and omissions outside the State of Georgia.

RESPONSE:  The Defendant denies that either John Renzulli or Robert Core

committed tortious acts in or outside Georgia.  The Defendant lacks the knowledge

or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 35 and, on that basis, denies the remaining allegations of

Paragraph 35 of the Complaint.

**36.**

**Defendants may be served pursuant to Rule 4 of the Federal Rules of Civil Procedure and/or 18 U.S.C. § 1965(d).**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Glock, Inc. (a) is a Georgia Corporation located at 6000 Highlands

Pkwy SE, Smyrna, Georgia 30082; (b) is authorized to transact business in the

State of Georgia; and (c) has designated itself as its registered agent.  The

Defendant also admits that Consultinvest, Inc. (a) is a Georgia Corporation located

at 6000 Highlands Pkwy SE, Smyrna, Georgia, 30082; (b) is authorized to transact

business in the State of Georgia; and (c) has designated Glock, Inc. as its registered

agent.  Because Counts III, IV, and V have been dismissed, the Defendant denies

that any defendant has been or may be served pursuant to 18 U.S.C. § 1965(d),

which relates only to those dismissed claims.  The Defendant lacks knowledge or

information insufficient to form a belief as to the truth of the allegations of

Paragraph 36 of the Complaint as they relate to defendant Robert Core and, on that basis, denies the remaining allegations of Paragraph 36 with respect to Mr. Core.

**37.**

**Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Glock Inc. and Consultinvest reside and maintain their principal places of business within the Northern District of Georgia. Further, venue is proper in this district pursuant to § 1391(b)(2) because:**

**(a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district;**

**(b) Defendants pursued the malicious prosecution of Plaintiff under color of state law in conspiracy with State Actors located in this judicial district and using the courts of Cobb County, also located within this judicial district; and**

**(c) a substantial part of the property that is the subject of the action is situated in this judicial district.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Glock, Inc. is a Georgia corporation located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082 and Consultinvest, Inc. is a Georgia corporation located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082.  The Defendant denies the remaining allegations of Paragraph 37 of the Complaint.

## IV.   BACKGROUND INFORMATION

**A.   The "Glock Structure"**

**38.**

**Glock Inc. is one of the world's best known and most profitable firearms companies.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Glock, Inc. is one of the preeminent small arms manufacturing

companies in the world.  The Defendant denies the remaining allegations of

Paragraph 38 of the Complaint.

**39.**

**Based in Smyrna, Georgia (and within this federal judicial district), Glock Inc. sells pistols manufactured by Glock Ges.m.b.H. in Austria.**

RESPONSE:  The Defendant admits that Glock, Inc. is a Georgia corporation

located at 6000 Highlands Pkwy SE, Smyrna, Georgia 30082 and that Glock, Inc.

sells certain pistols manufactured by Glock Ges.m.b.H., an Austrian limited

liability company.

**40.**

**Glock Inc. sells weaponry to military and law enforcement agencies in at least forty eight countries, and to civilians in more than 100 countries.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Glock pistols are a popular choice among firearm consumers and that

Glock, Inc. supplies pistols to civilians and military and law enforcement agencies

in the United States.  The Defendant denies the remaining allegations of Paragraph

40 of the Complaint.

**41.**

**With an approximate sixty five percent market share, Glock Inc. dominates the United States gun market, the most lucrative market for**

1431853.1

handguns in the world. **Throughout its history and today, the overwhelming bulk of Glock Inc.'s revenues have come from the United States.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Glock, Inc. has a significant share of the law enforcement pistol market in the United States and that the sale of Glock pistols in the United States is responsible for a large percentage of Glock, Inc. pistol revenues.  The Defendant denies the remaining allegations of Paragraph 41 of the Complaint.

**42.**

**Glock's annual revenues have been estimated at $400 million, with more than a million of its guns sold in the United States in a single year.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Glock, Inc. has sold more than a million Glock pistols in a single year.  The Defendant denies the remaining allegations of Paragraph 42 of the Complaint.

**43.**

**Glock Inc.'s success in penetrating the world's largest gun market, combined with an estimated profit margin per pistol of sixty eight percent made Glock Inc. a cash cow and extraordinary wealth-generating machine.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Glock, Inc. has been successful in selling Glock pistols in the United States.  The Defendant denies the remaining allegations of Paragraph 43 of the Complaint.

1431853.1

**44.**

Behind the scenes of Glock, Inc.'s astonishing success in conquering the American gun market, however, all was not well. Glock Sr. employed shadowy figures adept at creating a corporate structure, the Glock Structure that, through a sequence of sham corporate acts, would repeatedly and falsely manipulate the stated ownership of Glock Inc. and the Glock Structure.

RESPONSE:  The Defendant denies the allegations of Paragraph 44 of the

Complaint.

**45.**

These corporate machinations, which began almost as soon as Glock Inc. was formed, were just the beginning stages of what would eventually become a much broader racketeering scheme to siphon, divert, and hide monies and assets.

RESPONSE:  The Defendant denies the allegations of Paragraph 45 of the

Complaint.

**46.**

The history of corporate acts reflecting the purported ownership of the Glock Structure over time is a study in disrespect for corporate formalities and the corporate form. It includes backdated documents, bearer agreements, abuse of powers of attorney, bogus agreements, phantom capital increases, and gratuitous share transfers masquerading as if they had a bona fide economic purpose.

RESPONSE:  The Defendant denies the allegations of Paragraph 46 of the

Complaint.

**47.**

This was consistent with Glock Sr.'s habitual disregard of corporate formalities and purposeful misuse of legal documents that failed to correspond with reality.

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 47 of the

Complaint.

**48.**

**Upon information and belief, Glock Sr. and Charles Ewert ("Ewert") designed and operated the Glock Structure from its inception in the 1980s until July 27, 2009.**

RESPONSE:  The Defendant denies the allegations of Paragraph 48 of the

Complaint.

**49.**

**Glock Sr. relied upon Ewert to develop a comprehensive plan for structuring and operating Glock Structure in such a way that Glock Sr. and his associates would be able to systematically and secretly divert income and assets from Glock Inc. for themselves.**

RESPONSE:  The Defendant denies the allegations of Paragraph 49 of the

Complaint.

**50.**

**The Glock Structure was created to, and upon information and belief continues to, operate as Glock Sr.'s alter ego.**

RESPONSE:  The Defendant denies the allegations of Paragraph 50 of the

Complaint.

**51.**

**Ewert served as a trustee of Glock Sr. and together they improperly and unlawfully diverted over $100 million of revenues. Also, Ewert embezzled millions of dollars for himself.**

1431853.1

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert was a trustee for Gaston Glock Sr. and that Ewert stole millions

of dollars from Glock Sr. and Glock companies through, among other methods, the

diversion of revenues.  The Defendant denies the remaining allegations of

Paragraph 51 of the Complaint.

**52.**

**The structure devised by Glock Sr. and Ewert was complex and had several salient features intended to facilitate their scheme.**

RESPONSE:  The Defendant denies the allegations of Paragraph 52 of the

Complaint.

**53.**

**Defendants carried out a methodical and deliberate pattern and practice of conducting sham transactions over a period of decades.**

RESPONSE:  The Defendant denies the allegations of Paragraph 53 of the

Complaint.

**54.**

**One significant feature of the Glock Structure's corporate organization installed Ewert as the ostensible face of a Luxembourgish entity named Unipatent Holding S.A. ("Unipatent"). Unipatent was portrayed falsely by Glock Sr. as an arm's-length partner of Glock Ges.m.b.H that had supposedly helped the company distribute its products internationally.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Unipatent Holding S.A. was a Luxembourg company for which Ewert

was a trustee.  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the remaining allegations of Paragraph 54 and, on

that basis, denies the remaining allegations of Paragraph 54 of the Complaint.

**55.**

**Organizational charts illustrating the structure are attached hereto as Exhibit A and B. They do not include every member of the so-called Glock Structure or depict it as it may exist in the present day. The depicted entities included not only Glock Inc. (distribution for North America), but also Glock Hong Kong, and Glock America (distribution for Asia and South America, respectively).**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Glock, Inc. distributes Glock pistols in the United States and that Glock

(H.K.) Ltd. and Glock America N.V. previously distributed Glock pistols in the

Asian and South American markets respectively.  The Defendant lacks the

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 55 and, on that basis, denies the remaining

allegations of Paragraph 55 of the Complaint.

**56.**

**A second feature was a system of "royalty" payments to be made by Glock Inc. for use of the "Glock" name and logo. Although any legitimate payments should have been made to Glock Ges.m.b.H. (which held, at a minimum, a trademark for the logo), they were actually used as a means to funnel money to Glock Sr.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 56 of the

Complaint.

**57.**

**By way of illustration, the initial agreement concerning royalty payments was dated as of December 1985 and signed by Glock Sr. (on behalf of Glock Ges.m.b.H.) and his associate Walter (on behalf of Glock Inc.). On information and belief, Glock Sr. has directly received improper royalty payments, despite the fact that he has never owned a trademark for either the Glock name or logo.**

RESPONSE:  The Defendant denies the allegations of Paragraph 57 of the

Complaint.

**58.**

**The third feature of the scheme was that Ewert would form and operate three offshore "billing companies," whose sole purpose was to issue fake invoices to the operating entities of the Glock Structure. At one time, these billing companies included:**
**(a) Base Technical Engineers Limited ("BTE"), incorporated in Ireland, that issued fake invoices to Glock Ges.m.b.H.;**
**(b) Minami Enterprises Limited ("Minami"), incorporated in Liberia, that issued fake invoices to Glock Hong Kong; and**
**(c) Taziria A.V.V. ("Taziria"), incorporated in Aruba, which issued fake invoices to Glock America.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 58 and, on that basis,

denies the allegations of Paragraph 58 of the Complaint.

**59.**

**The fourth feature was that Ewert would act as the face of real estate holding companies also owned by Unipatent, whose purpose was to "own" the**

1431853.1

27

real property and equipment of the Glock Structure and to collect fraudulent "rents" from operating Glock Structure companies.  These real estate holding companies included Consultinvest, Inc., incorporated in the State of Georgia with its registered agent in Cobb County.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Glock, Inc. has been designated as the registered agent for

Consultinvest, Inc., a Georgia corporation, and that Consultinvest, Inc. owns

certain equipment and land and several buildings on Highlands Parkway in

Smyrna, Georgia, parts of which are leased to Glock, Inc.  The Defendant denies

the remaining allegations of Paragraph 59 of the Complaint.

**60.**

Glock Sr. and his associates incorporated Consultinvest solely for the purpose of collecting rents from Glock Inc.

RESPONSE:  The Defendant denies the allegations contained in Paragraph 60 of

the Complaint.

**61.**

The fifth feature was that Ewert would form and operate sham finance companies, whose purpose was to document phony loans to the real estate holding companies - such as Consultinvest - and to issue fake invoices to them for purported interest on those loans.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert created false loans to steal interest payments from Consultinvest,

Inc., which were paid to sham finance companies that Ewert created for his sole

1431853.1

28

benefit.  The Defendant denies the remaining allegations of Paragraph 61 of the

Complaint.

**62.**

**Glock Sr. stood behind the activities of each of the foregoing entities. Contrary to sworn deposition testimony in various lawsuits involving Glock guns, Glock Sr. owned 100 percent of Unipatent through a Panamanian entity, Reofin International S.A. ("Reofin").**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 62 and, on that basis,

denies the allegations of Paragraph 62 of the Complaint.  The Defendant denies

that Gaston Glock Sr. stood behind the alleged activities referred to in Paragraph

62 of the Complaint.

**63.**

**Glock Sr. gave perjured testimony in a case against Glock Inc. and Glock Ges.m.b.H. in a South Carolina state court when he falsely denied any personal knowledge of Unipatent's  ownership. Kimbrell v. Glock, Inc., Case No. 96-C-42-1946, Mar. 2, 1998 Glock Sr. dep. at 69, 71. (Ct. Com. Pl. Spartanburg Cnty., S.C.).[1]**

RESPONSE:  The Defendant denies the allegations of Paragraph 63 and footnote 1

of the Complaint.

---

[1] **Upon information and belief, Renzulli, in his capacity as corporate counsel for the Glock Structure corporate entities involved in the lawsuits would have witnessed Glock Sr.'s perjury.**

1431853.1

**64.**

  **The truth was materially different. Glock Sr. did know who owned Unipatent. He owned it through Reofin.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 64 and, on that basis,

denies the allegations of Paragraph 64 of the Complaint.

**65.**

  **Through a series of foreign entities, including Reofin and Unipatent, Glock Sr. owned 100 percent of the real estate holding company Consultinvest and all of the "other half" of the Glock operating subsidiaries Glock Inc., Glock Hong Kong, and Glock America. Either through Reofin, or directly, Glock Sr. also owned 100 percent of the three offshore "billing companies" - BTE, Minami, and Taziria.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 65 and, on that basis,

denies the allegations of Paragraph 65 of the Complaint.

**66.**

  **Reofin served as a collection point for Glock Sr., whereby income and assets that were siphoned or diverted away from other corporate entities would eventually funnel into an entity, or entities, under Glock Sr.'s control. Upon information and belief, Ewert did not receive formal compensation for his role in the scheme, but was instead expected to take his cut directly from the entities and bank accounts that he administered.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 66 and, on that basis,

denies the allegations of Paragraph 66 of the Complaint.

1431853.1

**67.**

**The complex features and unlawful purpose(s) of the Glock Structure were uncovered by Harper because of his engagement to pursue a lengthy and challenging internal investigation triggered by a bizarre falling out between Glock Sr. and Ewert, described in more detail infra.**

RESPONSE:  The Defendant denies the "unlawful purposes" allegations in

Paragraph 67 of the Complaint. The Defendant lacks the knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of Paragraph

67 and, on that basis, denies the remaining allegations of Paragraph 67 of the

Complaint.

**B.     The Falling Out Between Glock Sr. and Ewert**

**68.**

**Glock Sr.'s use of the Glock Structure to siphon, divert, and hide monies and corporate assets proceeded without any significant disruption until the summer of 1999 when Glock Sr. was attacked by an assailant in a parking garage in Luxembourg.  Subsequently, Ewert was implicated in the bungled assassination-for-hire scheme.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert was implicated in and subsequently convicted for the attempted

murder of Gaston Glock Sr. based on an attack that occurred in a parking garage in

Luxembourg in the summer of 1999.  The Defendant denies the remaining

allegations of Paragraph 68 of the Complaint.

**69.**

What followed next was a legal battle for corporate control over the components and pieces of the Glock Structure, even as the criminal investigation of Ewert proceeded simultaneously.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that there were legal proceedings related to Ewert's attempts to take control over various entities.  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 69 and, on that basis, denies the remaining allegations of Paragraph 69 of the Complaint.

**70.**

Especially from 2000 to 2003, Glock Sr. and Ewert (and their lawyers and proxies) jousted in a series of legal skirmishes for control of the Glock Structure, including Unipatent, Consultinvest, and their respective bank accounts.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that there were legal proceedings relative to Ewert's attempts to take control over various entities.  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 70 and, on that basis, denies the remaining allegations of the Paragraph 70 of the Complaint.

**71.**

Because many of these companies had been incorporated or based in far-flung jurisdictions – many of them notorious for having loose legal

restrictions and/or as havens for money laundering and organized crime – Glock Sr. and Ewert's legal battles spanned the world globe.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 and, on that basis, denies the allegations of Paragraph 71 of the Complaint.

**72.**

To aid him in this struggle, in 2000 Glock Sr. retained Harper, who would ultimately lead a team of lawyers and investigators under his supervision. Among other things, Harper was tasked with winning the contest with Ewert and cementing Glock Sr.'s control over the lucrative Glock Structure.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 and, on that basis, denies the allegations of Paragraph 72 of the Complaint.

**V.    THE INVESTIGATION BY HARPER**

**73.**

In pursuing Ewert through courts across the world, however, Glock Sr. had to disavow the fictive legal relationships Glock Sr. and Ewert had previously put in place together for the purpose of creating a patina of legitimacy for their unlawful transactions.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73 and, on that basis, denies the allegations of Paragraph 73 of the Complaint.

1431853.1

**74.**

**Upon engaging Harper, Glock Sr. denied any knowledge or participation in the Glock Structure's schemes and blamed Ewert. At that time, and given Ewert's public implication in an assassination attempt upon Glock Sr., Harper had no cause to doubt Glock Sr.'s explanation.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert was implicated in and subsequently convicted for the attempted

murder of Gaston Glock Sr. and that Ewert developed and executed fraudulent

schemes for his own financial benefit.  The Defendant denies the remaining

allegations of Paragraph 74 of the Complaint.

**75.**

**Harper accepted Glock Sr.'s assignment to defeat "Ewert's embezzlement scheme" and, secondarily, to guide the Glock Structure through the plethora of then-pending and anticipated investigations regarding legal and tax compliance.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 75 and, on that basis,

denies the allegations of Paragraph 75 of the Complaint.

**A.     Scope of the Harper Team's Engagement**

**76.**

**In or about August 2000, Glock Sr. and Glock Inc. retained Harper to defeat Ewert's embezzlement scheme and to bring the Glock Structure into legal and tax compliance.**

1431853.1

34

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 76 and, on that basis,

denies the allegations of Paragraph 76 of the Complaint.

**77.**

**The scope of Harper's engagement for Glock Sr. developed into an investigation involving activities in Luxembourg, Ireland, Panama, Curacao, the United States, Hong Kong, Turkey, and other jurisdictions across the world.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 77 and, on that basis,

denies the allegations of Paragraph 77 of the Complaint.

**78.**

**Harper was given "carte blanche" authority by Glock Sr. to accomplish the goals of the investigation. Harper retained the services of over a dozen lawyers, accountants, security personnel, and other professionals in the United States and internationally to accomplish this assignment.**

RESPONSE:  The Defendant denies that Harper had fully authority from Gaston

Glock Sr. to conduct an investigation without limitations.  The Defendant lacks the

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraphs 78 and, on that basis, denies the remaining

allegations of Paragraph 78 of the Complaint.

**79.**

**Glock Sr. told Harper he had not known about the embezzlement / tax fraud schemes; Glock Sr. blamed Ewert.**

1431853.1

35

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert developed and executed fraudulent schemes. The Defendant

denies that Gaston Glock Sr. was involved.  The Defendant lacks the knowledge or

information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 79 and, on that basis, denies the remaining allegations of Paragraph

79 of the Complaint.

**80.**

**Part of Harper's responsibility was to liaise with law enforcement for purposes of disclosing information on Ewert and the Glock Structure for purposes of prosecuting Ewert.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Harper met with several government agencies in the United States.

The Defendant lacks the knowledge of or information sufficient to form a belief as

to the truth of the remaining allegations of Paragraph 80 and, on that basis, denies

the remaining allegations of Paragraph 80 of the Complaint.

**81.**

**Consequently, the strategy for combating Ewert's designs partially depended upon Harper's credibility with law enforcement in the United States who Harper, on Glock Sr.'s behalf, would supply with evidence of Ewert's culpability.**

1431853.1

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 81 and, on that basis,

denies the allegations of Paragraph 81 of the Complaint.

**82.**

**Harper accepted the Glock engagement upon the express condition that Glock Sr. authorized Harper to fully cooperate with the federal law enforcement authorities.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 82 and, on that basis,

denies the allegations of Paragraph 82 of the Complaint.

**83.**

**Harper took the case on the conditions that Glock Sr., Glock Inc., and the Glock Structure fully cooperate with his investigation and that they give him authority to share openly, candidly, and completely what he learned with the FBI, IRS, and other government and court-appointed authorities who were or would be conducting investigations of Ewert's embezzlement and the face value tax fraud and money laundering schemes. Glock Sr., as well as agents of Glock Inc., Consultinvest, and other Glock Structure agents agreed to these conditions.**

RESPONSE:  The Defendant denies that Harper had full authority to conduct an

investigation without limitations.  The Defendant lacks the knowledge or

information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 83 and, on that basis, denies the remaining allegations of Paragraph

83 of the Complaint.

1431853.1

**84.**

**With Glock Sr.'s knowledge and approval Harper hired a team of professionals - lawyers, CPAs, security personnel, experts in funds tracing, and support staff - to meet the needs of his ever-expanding investigation involving operations in Luxembourg, Ireland, Panama, Curacao, the United States, Hong Kong, Turkey, and other places.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 84 and, on that basis,

denies the allegations of Paragraph 84 of the Complaint.

**85.**

**Glock Sr. strictly limited the persons within the Glock Structure who had knowledge of the activities of Harper's investigation. He instructed Harper to limit his communications within the Glock Structure to Glock Sr. and certain of his most trusted advisors. Harper complied with this request.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 85 and, on that basis,

denies the allegations of Paragraph 85 of the Complaint.

**B.     Billing Rates and Terms**

**86.**

**Glock Sr. instructed Harper to negotiate his billing rates, expenses, and other billing terms with Paul Jannuzzo ("Jannuzzo").**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 86 and, on that basis,

denies the allegations of Paragraph 86 of the Complaint.

1431853.1

**87.**

**Jannuzzo was a long-time Glock Inc. lawyer and trusted personal confidante of Glock Sr. Jannuzzo reported directly to Glock Sr., himself.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Jannuzzo previously served as General Counsel for Glock, Inc.  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 87 and, on that basis, denies the remaining allegations of Paragraph 87 of the Complaint.

**88.**

**Harper was instructed by Glock Sr. to submit all bills for the investigation to Jannuzzo for approval and payment.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 88 and, on that basis, denies the allegations of Paragraph 88 of the Complaint.

**89.**

**Upon information and belief, Harper complied with this instruction.**

RESPONSE:  The Defendant denies the allegations of Paragraph 89 of the Complaint.

**90.**

**Likewise, Harper's bills were handled with minimal disclosure to regular Glock Inc. staff.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 90 and, on that basis,

denies the allegations of Paragraph 90 of the Complaint.

**91.**

**Regarding Harper's investigation Jannuzzo was directed by Glock Sr. that cost was "no object" and that Jannuzzo should not do anything to impede the progress of Harper's investigation.**

RESPONSE:  The Defendant denies the allegations of Paragraph 91 of the

Complaint.

**92.**

**Glock Sr. had access to Harper's bills, either by direct request to Harper or through Jannuzzo.**

RESPONSE:  The Defendant denies the allegations of Paragraph 92 of the

Complaint.

**93.**

**From late 2000 to March of 2003, Harper submitted bills to Jannuzzo for review and payment and in accordance with Glock Sr.'s instructions.**

RESPONSE:  The Defendant denies the allegations of Paragraphs 93 of the

Complaint.

**94.**

**Jannuzzo reviewed, approved, directed payment on, and kept confidential Harper's bills, all in accordance with Glock Sr.'s instructions.**

RESPONSE:  The Defendant denies the allegations of Paragraph 94 of the

Complaint.

**95.**

**In early 2003, Jannuzzo and Glock Sr. had a personal disagreement and falling out. Jannuzzo resigned his employment from Glock Inc. and, later, from Consultinvest. Upon information and belief, Jannuzzo left Harper's bills at Glock Inc.'s offices.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Jannuzzo resigned from his positions at Glock, Inc. and Consultinvest,

Inc. in 2003.  The Defendant denies the remaining allegations of Paragraph 95 of

the Complaint.

**C.    Harper's Investigation Succeeds Regarding Ewert but Also Uncovers Evidence Pointing to Complicity of Glock Sr.**

**96.**

**From 2000 until March of 2003, Harper's investigation was intensive.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 96 and, on that basis,

denies the allegations of Paragraph 96 of the Complaint.

**97.**

**Harper and his team uncovered that, until July 27, 1999, Glock Sr. and Ewert used the Glock Structure to launder a portion of Glock Inc. revenues through "face value" schemes that were unlawful. These schemes involved transfers of approximately $103,260,000 through phony marketing and "support" companies, and transfers of additional millions through Consultinvest in that:**

1431853.1

41

    **(a) Glock Ges.m.b.H., an Austrian company owned directly or indirectly by Glock Sr., would artificially misallocate distribution of its guns among three companies within the Glock Structure: Glock Inc., Glock America, N.V. (South America) ("Glock America"), and Glock (H.K.) Limited (Hong Kong) ("Glock HK").**

    **(b) For no legitimate reason, Glock Ges.m.b.H. would charge Glock Inc. higher prices than it charged Glock America and Glock HK.**

    **(c) Glock America and Glock HK would "sell" most of their allocations, which they had no reasonable expectation of selling in their territories, to Glock Inc. at artificially inflated prices.**

    **(d) Glock America and Glock HK would "pay" the difference, or some portion of the difference, in the prices to phony marketing companies. Glock America "paid" Taziria Holding, A.V.V. ("Taziria") and Glock HK "paid" Minami Enterprises Limited ("Minami") for non-existent marketing services. In this fashion, through July 1999, Minami skimmed in excess of $19.75 million and Taziria skimmed in excess of $20.5 million.**

    **(e) From Taziria and Minami, the funds would be funneled into other contrived shell companies having no real or legitimate business purpose. Taziria and Minami would transfer the proceeds to other bank accounts including the accounts of Reofin International, S.A. ("Reofin"), a Panamanian company.**

    **(f) Reofin would use the proceeds for various purposes such as to effect additional tax fraud schemes including, without limitation, funding loans to Consultinvest for the purchase of the land and buildings comprising the Glock Structure's North America headquarters in Smyrna, Georgia.  Consultinvest would collect rents from Glock Inc. pursuant to leases and thereafter claim fictitious "interest" deductions in tax filings.**

    **(g) The schemes also involved "paying" a company, BTE, for non-existent "technical support" with funds received from the distribution companies.**

RESPONSE:  To the extent that the allegations of Paragraph 97 relate to or

otherwise refer to alleged "phony marketing and 'support' companies," the

Defendant lacks the knowledge or information sufficient to form a belief as to the

truth of those allegations of Paragraph 97 and, on that basis, denies the allegations

of Paragraph 97 of the Complaint. The Defendant denies the remaining allegations

of Paragraph 97 of the Complaint.

**98.**

**Harper's investigation implicated Ewert in these schemes, which appeared to violate various laws against tax evasion, money laundering, etc., but also raised questions regarding the participation of Glock Sr.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert stole from Gaston Glock Sr. and Glock Companies.  The

Defendant denies that Gaston Glock Sr. was involved.  The Defendant denies the

remaining allegations of Paragraph 98 of the Complaint.

**99.**

**Early on, Harper learned Glock Structure monies were involved in the ownership of a Turkish bank with money-laundering and terrorist connections. This development strengthened Harper's belief that his work would require open, candid, and complete transparency with the FBI, the IRS, and other law enforcement agencies.**

RESPONSE:  The Defendant denies that Consultinvest, Inc. engaged in any

transactions with or had any involvement with any Turkish bank.  The Defendant

lacks the knowledge or information sufficient to form a belief as to the truth of any

allegation about what Harper allegedly learned or believed and, on that basis,

denies any such allegations of Paragraph 99.  The Defendant also lacks the

knowledge or information sufficient to form a belief as to the truth of any

1431853.1

remaining allegations of Paragraph 99 and, on that basis, denies any remaining

allegations of Paragraph 99 of the Complaint.

## 100.

**Initially, Glock Sr. and the Glock Structure agreed to and ratified Harper's strategy of cooperating with federal law enforcement and tax authorities.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 100 and, on that basis,

denies the allegations of Paragraph 100 of the Complaint.

## 101.

**In early winter of 2001, Glock Sr. personally attended a meeting with Harper and a special agent of the IRS as well as an assistant U.S. attorney in the office of the Northern District of Georgia.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 101 and, on that basis,

denies the allegations of Paragraph 101 of the Complaint.

## 102.

**During that meeting, the federal agents were emphatic that Glock Sr.'s full cooperation was required and that they were to follow the evidence "wherever it led."**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 102 and, on that basis,

denies the allegations of Paragraph 102 of the Complaint.

**103.**

**Glock Sr. agreed and, following the meeting, confirmed with Harper his instructions to proceed in full cooperation with the federal authorities, including the U.S. Attorney's Office, FBI, and IRS.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 103 and, on that basis,

denies the allegations of Paragraph 103 of the Complaint.

**104.**

**Harper's investigation yielded outstanding results in line with Glock Sr.'s instructions to, in essence, "get Ewert."**

RESPONSE:  The Defendant denies the allegations of Paragraph of 104 of the

Complaint.

**105.**

**In 2001, Harper retained Plaintiff, a lawyer with experience in complex commercial litigation, for purposes of assisting with special projects and litigation strategy. At first, Harper asked Plaintiff to assist him with projects associated with Ewert's embezzlement scheme. In 2002, Harper tasked Plaintiff with developing a legal strategy to defeat Ewert's claim to Taziria, a company within the Glock Structure that was then under the control of Ewert.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 105 and, on that basis,

denies the allegations of Paragraph 105 of the Complaint.

**D.   Harper's Team Facilitates Investigation of Competing Claims to Ownership over Unipatent**

**106.**

**After the failed assassination attempt, Ewert claimed ownership of Unipatent, a Luxembourg company within the Glock Structure.**

RESPONSE:  The Defendant admits in part and denies in part. The Defendant admits that Ewert was convicted for the attempted murder of Gaston Glock, Sr. and that Unipatent Holdings S.A. was a Luxembourg company for which Ewert was a trustee. The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 106 and, on that basis, denies the remaining allegations of Paragraph 106 of the Complaint.

**107.**

**According to Ewert, Unipatent owned two (phony) marketing companies (Taziria and Minami), a "support" company (BTE), Consultinvest, a half interest in Glock Inc., and interests in Glock America, Glock HK, and other companies.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Unipatent Holdings S.A. previously owned shares in Glock, Inc. and Consultinvest, Inc.  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 107 and, on that basis, denies the remaining allegations of Paragraph 107 of the Complaint.

**108.**

**Glock Sr. denied that Unipatent owned the phony marketing and "support" companies but he acknowledged that Unipatent owned Consultinvest, a half interest in Glock Inc., and interests in other entities in the Glock Structure, too.**

1431853.1

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Unipatent Holdings S.A. previously owned shares in Glock, Inc. and

Consultinvest, Inc.  The Defendant lacks the knowledge or information sufficient

to form a belief as to the truth of the remaining allegations of Paragraph 108 and,

on that basis, denies the remaining allegations of Paragraph 108 of the Complaint.

**109.**

**To decide the competing claims between Ewert and Glock Sr. over Unipatent's ownership, a Luxembourg court appointed Jacques Delvaux ("Delvaux"), a public notary, to administer Unipatent while Glock Sr. and Ewert contested its ownership.**

RESPONSE:  The Defendant admits the allegations of Paragraph 109 of the

Complaint.

**110.**

**Delvaux hired PriceWaterhouseCoopers (PwC) to apply agreed-upon procedures relating to an investigation of transactions in Unipatent to assist Delvaux in determining whether there had been any misappropriation of Unipatent's assets.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that the accounting firm of PricewaterhouseCoopers ("PwC") was retained

to conduct an audit of Unipatent's assets.  The Defendant lacks the knowledge or

information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 110 and, on that basis, denies the remaining allegations of Paragraph

110 of the Complaint.

## 111.

**Delvaux also had the power to recommend to the Luxembourg court which of Glock Sr. or Ewert owned Unipatent. As such PwC was tasked with gathering information from representatives of both Glock Sr. and Ewert, with the Harper team of investigators facilitating this effort on behalf of Glock Sr. and Glock Sr.'s claim regarding Unipatent.**

RESPONSE:  The Defendant denies that the Harper team "facilitated efforts" with

Delvaux and PwC on behalf of Gaston Glock, Sr.  The Defendant lacks the

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 111 and, on that basis, denies the remaining

allegations of Paragraph 111 of the Complaint.

## 112.

**Harper assigned two members of his team, Michael Stresser and Paul Phelan, ("Phelan") to provide to PwC the information gained through Harper's investigation. Glock Sr. knew of and approved this strategy.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 112 and, on that basis,

denies the allegations of Paragraph 112 of the Complaint.

## 113.

**Harper communicated directly with Glock Sr. regarding the investigation and his progress including his communications with PwC. Periodically Harper initiated discussions with Glock Sr. and his designated advisors about the investigation.**

1431853.1

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 113 and, on that basis,

denies the allegations of Paragraph 113 of the Complaint.

**114.**

**Harper also communicated with Glock Sr. regarding the costs of the investigation. After one meeting, Harper raised the issue of the growing demands of the investigation and the resulting increases in his monthly bills and expenses. Glock Sr. cut Harper off with a wave of his hand, saying in words or substance: "You're doing good work. It costs what it costs."**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 114 and, on that basis,

denies the allegations of Paragraph 114 of the Complaint.

**E.    Harper Discovers the Adaptation of Ewert's Glock Structure Schemes by Glock Sr.**

**115.**

**As the investigation proceeded, Harper learned that the Glock Structure had operated the face value tax fraud and embezzlement schemes set out above. Consequently, as early as November 1, 2000, Harper warned Glock Sr. in writing of the potential disaster if these issues were not addressed, remedied, and cleared with the appropriate legal authorities.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of any allegation about what Harper allegedly learned

or believed and, on that basis, denies the allegations of the first sentence of

1431853.1

Paragraph 115 of the Complaint.  Upon information and belief, the Defendant

denies the remaining allegations of Paragraph 115 of the Complaint.

**116.**

**Unknown to Harper, although Glock Sr. outwardly indicated his agreement with Harper's admonitions and concerns, behind the scenes Glock Sr. was planning to cement his control over, and then perpetuate, Ewert's face value scheme for the Glock Structure instead of cleaning it up.**

RESPONSE:  The Defendant denies the allegations of Paragraph 116 of the

Complaint.

**117.**

**After Ewert's assassination attempt, Glock HK and Minami quietly were "cloned" at Glock Sr.'s direction. To do this, Glock Sr. directed his Austrian lawyer, Johann Quendler, ("Quendler") to form new companies with the same names as, but in different jurisdictions from, the pre-existing companies and directed the Glock Ges.m.b.H. production "quota" to the new Glock HK. Glock, Sr. then had the cloned Glock HK re-direct funds to the new Minami.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 117 and, on that basis,

denies the allegations of Paragraph 117 of the Complaint.

**118.**

**As the Harper team's investigation progressed, Harper determined that he needed to review the records of Glock HK and Minami. Harper requested access to these records. At the time, Harper thought there was only one Glock HK and one Minami; he had not learned of the cloned ones.**

1431853.1

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 118 and, on that basis, denies the allegations of Paragraph 118 of the Complaint.

**119.**
**Quendler advised Glock Sr. to deny Harper access to the records.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 119 and, on that basis, denies the allegations of Paragraph 119 of the Complaint.

**120.**
**Glock Sr. overruled Quendler and approved Harper's request.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 120 and, on that basis, denies the allegations of Paragraph 120 of the Complaint.

**121.**
**Harper directed one of his team associates to fly to Hong Kong and return with the records.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 121 and, on that basis, denies the allegations of Paragraph 121 of the Complaint.

**122.**
**Upon reviewing the records from Hong Kong, it was evident to Harper that the company had been cloned. He also discovered that Glock Sr., with**

**Quendler's help, had adapted and continued the face value schemes previously thought to be perpetrated solely by Ewert. Specifically, Harper discovered that Glock Sr. had personally signed phony invoices for the cloned Minami in 1999, 2000, and 2001.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 122 and, on that basis, denies the allegations of Paragraph 122 of the Complaint.

### 123.

**In August of 2002, Harper held a face-to-face meeting with Glock Sr. and his Austrian lawyer, Quendler. Harper showed them the records and explained to them that the clone-and-adapt activity was an unlawful scheme.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 and, on that basis, denies the allegations of Paragraph 123 of the Complaint.

### 124.

**At first, Quendler pretended he did not understand and/or tried to deflect Harper's questions. Quendler turned to Glock Sr., speaking German so the Americans could not understand.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 124 and, on that basis, denies the allegations of Paragraph 124 of the Complaint.

### 125.

**Glock Sr. grinned, then instructed Quendler to acknowledge to Harper what they had done, saying words to the effect that "you might as well tell them ... they are going to find out anyway."**

1431853.1

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 125 and, on that basis,

denies the allegations of Paragraph 125 of the Complaint.

**126.**
      **Immediately, Quendler dropped his pretense. In English, he admitted that Glock Sr. and he had set up the cloned companies and had prepared the phony invoices and supporting bank transfers.**

RESPONSE:  The Defendant denies that Gaston Glock Sr. engaged in any

fraudulent billing practices.  The Defendant lacks the knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of Paragraph

126 and, on that basis, denies the remaining allegations of Paragraph 126 of the

Complaint.

**127.**
      **Harper advised Glock Sr. of the legal problems and potential liabilities regarding this adaptation and continuance of Ewert's scheme. Harper also advised Glock Sr. that his conduct left him open to serious legal repercussions. Glock Sr. said he would follow Harper's advice to continue cooperating with both Harper's investigation and with the strategy of disclosing fully with law enforcement in order to "clean house." Glock Sr. told Harper, "Let the chips fall where they will."**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 127 and, on that basis,

denies the allegations of Paragraph 127 of the Complaint.

1431853.1

**F.     Plaintiff Finds the Missing Link to Defeat Ewert's Embezzlement Scheme**

**128.**

**Ewert maintained influence over key companies in the Glock Structure, including Taziria. This control by Ewert was felt by Glock Sr. and others to be a threat to maintaining control over the cash-flow from Glock Inc. and its related entities.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that subsequent to the assassination attempt, Gaston Glock Sr. learned that

Ewert had attempted to take control over various entities.  The Defendant lacks the

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 128 and, on that basis, denies the remaining

allegations of Paragraph 128 of the Complaint.

**129.**

**Ewert filed a lawsuit in Curaçao to maintain control of Taziria.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert was a party to a number of legal proceedings in various

jurisdictions.  The Defendant lacks the knowledge or information sufficient to form

a belief as to the truth of the remaining allegations of Paragraph 129 and, on that

basis, denies the remaining allegations of Paragraph 129 of the Complaint.

**130.**

**In 2002 Harper assigned Plaintiff with responsibility for developing a strategy to defeat Ewert's claim to Taziria and, subsequently, directed**

**Plaintiff to present the strategy in person to Glock Sr. in a meeting at Glock Inc.'s Smyrna facility.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 130 and, on that basis,

denies the allegations of Paragraph 130 of the Complaint.

### 131.

**After the meeting Harper asked Glock Sr. to authorize him to proceed with Plaintiff's strategy. Glock Sr. authorized Harper and Plaintiff to proceed.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 131 and, on that basis,

denies the allegations of Paragraph 131 of the Complaint.

### 132.

**Ewert claimed that Unipatent owned Taziria. Therefore Delvaux's appointment as administrator gave him an interest in the lawsuit. Delvaux agreed to a joint endeavor involving the strategy.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 132 and, on that basis,

denies the allegations of Paragraph 132 of the Complaint.

### 133.

**Plaintiff presented the strategy to local counsel and oversaw its implementation.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 133 and, on that basis,

denies the allegations of Paragraph 133 of the Complaint.

### 134.

**The strategy worked. Months later, a Curaçao court entered an order that gave Glock Sr. and Unipatent the sought-after rights to Taziria, which rights were subject to adjudication of Glock Sr. and Unipatent's competing claim as the sole owner.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 134 and, on that basis,

denies the allegations of Paragraph 134 of the Complaint.

### 135.

**Plaintiff assisted Glock Sr. and Delvaux with the appointment of a new trustee. This trustee helped Plaintiff obtain Taziria's bank records. Plaintiff forwarded these records to Phelan, who used them to trace Taziria funds into numerous Ewert-controlled companies, including an equity contribution in Europtima S.A ("Europtima").**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 135 and, on that basis,

denies the allegations of Paragraph 135 of the Complaint.

### 136.

**Europtima was key to unraveling the Ewert-led embezzlement scheme. Ewert claimed ownership of Europtima. He claimed Europtima was an owner of Unipatent. The bank records showed that Taziria had made equity contributions to Europtima. Therefore, whoever owned Taziria also was an**

owner of Europtima. The Curaçao court had awarded Taziria to Glock Sr. and Unipatent. Therefore, either Glock Sr. or Unipatent was an owner.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 136 and, on that basis,

denies the allegations of Paragraph 136 of the Complaint.

**137.**

Glock Sr. and Delvaux now had the ability to chase Ewert's embezzlement scheme into Ewert's own backyard. The bank records showed equity contributions and other payments to several other Ewert companies and persons of interest. Due to the successful execution of this strategy, the Harper team's work had begun to untangle Ewert's web of sham, shell companies.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 137 and, on that basis,

denies the allegations of Paragraph 137 of the Complaint.

**G.     Panama Operation**

**138.**

Reofin occupied a special place in the Glock Structure. Tens of millions of dollars flowed into Reofin's bank accounts through the phony marketing and "support" companies - Taziria, Minami, and BTE.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 138 and, on that basis,

denies the allegations of Paragraph 138 of the Complaint.

1431853.1

**139.**

Harper learned that Ewert had exercised control over Reofin and had used this control to launder tax fraud proceeds.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Ewert stole from Gaston Glock Sr. and Glock companies.  The Defendant denies the remaining allegations of Paragraph 139 of the Complaint.

**140.**

Glock Sr. claimed he owned Reofin. His claim of ownership was essential to his claim of ownership to Unipatent. This was because Glock Sr. claimed Reofin owned Unipatent.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 140 and, on that basis, denies the allegations of Paragraph 140 of the Complaint.

**141.**

Harper determined that Ewert's potential ability to control Reofin, if left unchecked, could undermine the work on Glock Sr.'s behalf with PwC to prove Glock Sr.'s ownership of Unipatent. Harper advised Glock Sr. of the threat. Glock Sr. authorized Harper to develop and execute a strategy in Panama.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 141 and, on that basis, denies the allegations of Paragraph 141 of the Complaint.

**142.**

Harper developed a strategy to seek the assistance of the Panama Attorney General as well as to create corporate documentation of Glock Sr.'s ownership of Reofin.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 142 and, on that basis, denies the allegations of Paragraph 142 of the Complaint.

**143.**

Harper hired two local Panamanians to assist with this strategy. Joselin Avendano, ("Avendano") a Panama lawyer, joined Harper's team. A private investigator, Sixto Saavendra, also joined.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 143 and, on that basis, denies the allegations of Paragraph 143 of the Complaint.

**144.**

Harper learned that the Panama Attorney General would require Glock Sr. to appear in person and swear to the fact of his ownership of Reofin.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 144 and, on that basis, denies the allegations of Paragraph 144 of the Complaint.

**145.**

Harper determined that this requirement would pose a dilemma for Glock Sr, in part because of apparently false or misleading testimony Glock Sr. had previously given under oath.

RESPONSE:  The Defendant denies that Gaston Glock Sr. testified falsely under

oath.  The Defendant lacks the knowledge or information sufficient to form a belief

as to the truth of any allegation about what Harper allegedly determined or

believed to be a dilemma and, on that basis, denies the allegations of Paragraph

145 of the Complaint.

**146.**

**Specifically, on September 18, 1995, Glock Sr. had testified under oath that he did not know who owned Unipatent. This was not the only time Glock Sr. had falsely testified on the now-crucial issue of Unipatent's true ownership.**

RESPONSE:  The Defendant denies the allegation that Gaston Glock Sr. testified

falsely under oath and, on that basis, denies the allegations of Paragraph 146 of the

Complaint.

**147.**

**On March 2, 1998, Glock Sr. had also testified falsely at another deposition for a case then pending in a court in South Carolina. Glock Sr. again falsely testified that he did not own Unipatent.**

RESPONSE:  The Defendant denies the allegations of Paragraph 147 of the

Complaint.

**148.**

**Glock Sr.'s earlier false testimony appeared designed to conceal from discovery the role of Reofin in the Glock Structure unlawful scheme.**

RESPONSE:  The Defendant denies the allegations of Paragraph 148 of the

Complaint.

**149.**

     **However, the competing claims to Unipatent now forced Glock Sr. to choose between losing control over the Glock Structure or testifying to the truth about Unipatent's ownership by Reofin, even at the risk of the perjury being exposed.**

RESPONSE:  The Defendant denies that Gaston Glock Sr. testified falsely under

oath.  The Defendant lacks the knowledge or information sufficient to form a belief

as to the truth of the remaining allegations of Paragraph 149 and, on that basis,

denies the remaining allegations of Paragraph 149 of the Complaint.

**150.**

     **During a face-to-face meeting, Harper advised Glock Sr. his truthful testimony in Panama would conflict with his earlier testimony. Harper also explained to Glock Sr. that he risked losing his claim to Unipatent and its interests in the Glock Structure and the other companies if he did not truthfully testify that he owned Reofin.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 150 and, on that basis,

denies the allegations of Paragraph 150 of the Complaint.

**151.**

     **In February of 2003, Glock Sr. traveled to Panama and gave sworn testimony to the Panama Attorney General that he owned Reofin. Based on this testimony and Harper's investigative work (and that of his team), the Panama Attorney General decided to indict Ewert.**

1431853.1

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 151 and, on that basis,

denies the allegations of Paragraph 151 of the Complaint.

**152.**

**Harper arranged for payment of the entire cost of the Panama trip out of collections from his prior billings. These costs were part of the bills Harper submitted for payment after he quit the investigation in March of 2003. Harper was never paid for them.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that (a) Harper presented at least one fraudulent invoice for fees and

expenses related to Panama; and (b) the fraudulent invoice was not paid.  The

Defendant denies the remaining allegations of Paragraph 152 of the Complaint.

**153.**

**Glock Sr. later testified he owned Unipatent in direct contradiction of his testimony in the 1995 and 1998 depositions. For example in June 2004, Glock Sr. signed a sworn statement that Ewert sold him 100 percent of Reofin in 1987 and, further, that Reofin acquired the Luxembourgish company, Unipatent, a company Glock Sr. also claimed to own.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 153 and, on that basis,

denies the allegations of Paragraph 153 of the Complaint.

**154.**

**In 2002, Harper's work led to the re-incarceration of Ewert pending trial in Luxembourg on pre-existing criminal charges arising out of Ewert's attempted assassination of Glock Sr.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 154 of the

Complaint.

**155.**

**Harper's strategy – ratified by Glock Sr. and the Glock Structure – of cooperating and aiding government authorities who were also investigating Ewert led to a sealed indictment on or about November 5, 2002 against Ewert for financial crimes in the United States District Court for the Northern District of Georgia.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert was indicted by a grand jury in the Northern District of Georgia

in November 2002 for wire fraud and money laundering.  The Defendant lacks the

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 155 and, on that basis, denies the allegations of

Paragraph 155 of the Complaint.

**156.**

**The work of Harper's team also facilitated a Panamanian indictment of Ewert on or about February of 2003.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 156 and, on that basis,

denies the allegations of Paragraph 156 of the Complaint.

**157.**

**Harper's investigation also resulted in the identification of approximately $103,260,000 of proceeds involved in Ewert's schemes and the**

1431853.1

**tracing of approximately $32,765,000 of these proceeds for their anticipated recovery by Glock Sr. and/or the Glock Structure.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant admits that Ewert stole from Gaston Glock Sr. and Glock companies.  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 157 and, on that basis, denies the remaining allegations of Paragraph 157 of the Complaint.

**158.**

**Glock Sr. praised Harper and his team for these results and specifically instructed those approving the periodic payments for Harper's investigation to do nothing to impede the work Harper and his team were doing to aid in implicating Ewert in the schemes involving the Glock entities.**

RESPONSE:  The Defendant denies the allegations of Paragraph 158 of the Complaint.

**159.**

**Unbeknownst to Harper, however, Glock Sr. himself had been misleading with regard to his intentions. Glock Sr.'s expressions of support for Harper's strategy of cooperating with law enforcement authorities were about to evaporate.**

RESPONSE:  The Defendant denies the allegations of Paragraph 159 of the Complaint.

1431853.1

## VI.    GLOCK SR.'S REVERSAL OF POSITION

### 160.

In early March 2003, Glock Sr. suddenly reversed his position, directing one of his lawyers, Quendler, to write Harper with the instruction that all future work must be submitted to Glock Sr., effectively revoking Harper's previously-agreed authority to communicate and cooperate openly and candidly with various government and court-appointed authorities.

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 160 and, on that basis,

denies the allegations of Paragraph 160 of the Complaint.

### 161.

On or about March 13, 2003, Ewert was convicted by a court in Luxembourg for his role in the assault upon Glock Sr. Ewert's conviction cemented Glock Sr.'s complete reversal of Glock Sr.'s intentions regarding Harper's investigation.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Ewert was convicted for the first time in Luxembourg on March 12,

2003 for assaulting and attempting to murder Gaston Glock Sr.  The Defendant

denies the remaining allegations of Paragraph 161 of the Complaint.

### 162.

Once Ewert was convicted in March of 2003, Harper noticed a complete reversal of Glock Sr.'s attitude towards Harper's investigation and the plan to cooperate with law enforcement authorities in the United States and abroad in cleaning up the compliance issues plaguing the corporate structure of Glock Inc. and its related corporate entities.

1431853.1

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of allegations about what Harper allegedly noticed and,

on that basis, denies the allegations of Paragraph 162 of the Complaint.  In

addition, the Defendant denies any allegation that Gaston Glock Sr. did not

cooperate with law enforcement.

## 163.

**Rather than cease the schemes put in place by Ewert, Glock Sr. had adapted and continued them following Ewert's betrayal. Now, rather than "come clean," Glock Sr. appeared poised to conceal and even perpetuate the embezzlement and tax fraud schemes formerly run by Ewert.**

RESPONSE:  The Defendant denies the allegations of Paragraph 163 of the

Complaint.

## 164.

**Harper realized Glock Sr. did not intend to bring the Glock Structure into legal compliance.**

RESPONSE:  The Defendant denies the allegations of Paragraph 164 of the

Complaint.

## 165.

**Harper notified Quendler and Glock Sr. of his intent to cease actively pursuing the investigation in late March 2003.**

RESPONSE:  The Defendant denies the allegations of Paragraph 165 of the

Complaint.

## A.    Harper's Unpaid Bills

### 166.

When Harper stopped working on the investigation, he was owed a substantial sum for services rendered but not yet paid.

RESPONSE:  The Defendant denies the allegations of Paragraph 166 of the

Complaint.

### 167.

Glock Sr. demanded that Harper submit to an audit of his bills by Glock Sr.'s Austrian accountants. Harper agreed.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that an audit of Harper's fees started in April 2003.  The Defendant denies

the remaining allegations of Paragraph 167 of the Complaint.

### 168.

On April 15, 2003 the Austrian auditors issued a report, the "Poschel Report," concluding Harper and his team had cooperated and showing Harper was owed a substantial balance on his bills.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that an audit of Harper's fees started in April 2003.  The Defendant denies

the remaining allegations of Paragraph 168 of the Complaint.

### 169.

Glock Sr. and the Glock Structure concealed the results of the Poschel Report from Harper.

RESPONSE:  The Defendant denies the allegations of Paragraph 169 of the

Complaint.

**B.      Criminal Complaint Made Against Harper**

**170.**

**In the wake of his falling out with Paul Jannuzzo, Glock Sr. replaced Jannuzzo with Renzulli as the CEO of Consultinvest.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that John Renzulli became the CEO of Defendant Consultinvest, Inc. in

2008.  The Defendant denies the remaining allegations of Paragraph 170 of the

Complaint.

**171.**

**In October 2003, Glock Sr.'s personal lawyer for many years, Peter Manown ("Manown"), confessed to Renzulli he had been stealing from Glock Sr. Manown disclosed that his thefts involved accounts he had managed for Glock Sr.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that in October 2003, Peter Manown confessed to John Renzulli that: (a)

Manown had been stealing from Gaston Glock Sr.; and (b) part of Manown's thefts

involved accounts Manown had managed for Glock Sr.  The Defendant denies the

remaining allegations of Paragraph 171 of the Complaint.

**172.**

The Enterprise capitalized upon Manown's confession of criminal conduct as a false pretext for a campaign to discredit and ruin not only Jannuzzo but Harper and (later) Plaintiff.

RESPONSE:  The Defendant denies the allegations of Paragraph 172 of the

Complaint.

**173.**

Defendants, Glock Sr., and the Glock Structure retained Deichert, an Atlanta lawyer, and assigned him the task of instituting criminal prosecutions against not only Manown but Paul Jannuzzo and Harper.

RESPONSE:  The Defendant denies the allegations of Paragraph 173 of the

Complaint.

**174.**

Glock Sr. and Defendants knowingly and deliberately conspired with the above-named State Actors, acting under color of state law, to tamper with evidence, influence witnesses, and cause a wrongful apprehension / arrest / malicious prosecution, all in furtherance of the goals of the Enterprise.

RESPONSE:  The Defendant denies the allegations of Paragraph 174 of the

Complaint.

**175.**

In June of 2006 Glock Sr., and Defendants Glock Inc., Consultinvest, Renzulli and Deichert filed a criminal complaint with the FBI against Manown and Jannuzzo.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Renzulli sent a letter to the FBI on June 21, 2006, and respectfully

1431853.1

refers the Court to that letter for a complete and accurate statement of its contents.

The Defendant denies the remaining allegations of Paragraph 175 of the

Complaint.

## 176.

**Manown's case was assigned to the U.S. Attorney for the Middle District of Georgia. Manown accepted a plea bargain and a prison sentence of twenty two months.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Manown's case was assigned to the U.S. Attorney's Office for the

Middle District of Georgia.  The Defendant denies the remaining allegations of

Paragraph 176 of the Complaint.

## 177.

**Glock Sr., Defendants, and the Glock Structure directed Renzulli and Deichert to file a criminal complaint against Manown, Jannuzzo, and Harper with the City of Smyrna, Georgia. In June of 2007 Renzulli and Deichert filed the complaint.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Deichert sent a letter to the City of Smyrna, Georgia in June of 2007,

and respectfully refers the Court to that letter for a complete and accurate statement

of its contents.  The Defendant denies the remaining allegations of Paragraph 177

of the Complaint.

**178.**

On or about July 23, 2007, Deichert, acting in his capacity as agent and attorney for Defendants and Glock Sr., delivered a letter to Smyrna intended to support such a criminal prosecution that, among other things, falsely stated:

(a) that Harper's investigation of the Glock Structure was limited to activities in the United States when, in reality, its scope spanned world-wide;

(b) that Harper billed for work never performed and overbilling for work performed;

(c) that Harper wrote a "false exculpatory e-mail" to Avendano regarding Harper's unpaid bills for the Panama Operation;

(d) that Harper was dismissed by the Glock Structure, instead of quitting his investigation;

(e) that Harper had uncovered criminal activity by Manown and Jannuzzo and entered a conspiracy with them whereby Manown and Jannuzzo would pay Harper in exchange for covering up their crimes when Harper had not and, instead, had uncovered criminal activity implicating Glock Sr., a fact omitted from Deichert's letter and

(f) that the Glock Structure had discovered these "findings" of alleged misconduct by Harper and this was the reason Glock had "dismissed" Harper.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Deichert sent a letter dated July 23, 2007 to the City of Smyrna,

Georgia, and respectfully refers the Court to that letter for a complete and accurate

statement of its contents.   The Defendant denies the remaining allegations of

Paragraph 178 of the Complaint.

**179.**

All of the above statements in Deichert's letter were untrue, misleading, and part of the Enterprise's plan to target and injure Harper.

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 179 of the

Complaint.

**180.**

**Deichert sent the above letter at the behest of, and as an agent of, Glock Sr., Defendants, the Enterprise, and the Glock Structure.**

RESPONSE:  The Defendant denies the allegations of Paragraph 180 of the

Complaint.

**C.    Glock Sr., Glock Inc., Renzulli, Deichert, and Core Fabricate a Malicious Prosecution of Both Harper and Plaintiff**

**181.**

**The Enterprise's complaint was assigned to Officer Harrison of the Smyrna Police Department.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that Detective Keith Harrison of the City of Smyrna Police Department

conducted a criminal investigation in response to the June 2007 criminal

complaint.  The Defendant denies the remaining allegations of Paragraph 181 of

the Complaint.

**182.**

**In late 2007 or early 2008, Glock Sr., Glock Inc., and/or Consultinvest hired Core, another attorney, to manage, supervise, and control Harrison in the pursuit of the false arrest and prosecution of Harper and Plaintiff.**

RESPONSE:  The Defendant denies the allegations of Paragraph 182 of the

Complaint.

1431853.1

**183.**

Glock, Sr. and the Enterprise became dissatisfied with the progress in the federal criminal case in part because, upon information and belief, the FBI refused to share with them the content of its interview of Manown.

RESPONSE:  The Defendant denies the allegations of Paragraph 183 of the

Complaint.

**184.**

Sometime in 2006 or 2007, Glock Sr., Glock Inc., Consultinvest, Renzulli, and Deichert recruited the Cobb County District Attorney to get the Manown case transferred from the U.S. Attorney. In a highly unusual move, Cobb County D.A. Patrick Head ("D.A. Head") obtained a transfer of the case. After the transfer of his case, Manown negotiated a plea bargain with D.A. Head. Instead of the federal sentence of twenty two months, Manown's plea deal was sweetened to mere probation.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that: (a) the Cobb County District Attorney's Office prosecuted Manown;

and (b) Manown negotiated a plea deal which included probation as part of his

sentence.  The Defendant denies the remaining allegations of Paragraph 184 of the

Complaint.

**185.**

The Cobb County D.A. scheduled a proffer of Manown on October 17, 2007. In another highly unusual move, the Cobb County D.A. permitted Renzulli, identified as a witness in the Smyrna Complaint, to control the proffer and questioning of Manown.

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that John Renzulli participated in the proffer of Peter Manown in October

1431853.1

73

2007 at the request of the Cobb County District Attorney's Office.  The Defendant

denies the remaining allegations of Paragraph 185 of the Complaint.

### 186.

**At the proffer, Renzulli repeatedly tried to maneuver Manown into implicating Harper.  But Manown denied that Harper had stolen anything or had engaged in any criminal acts.**

RESPONSE:  The Defendant denies the allegations of Paragraph 186 of the

Complaint, and respectfully refers the Court to the transcript of the proffer for an

accurate and complete statement of its contents.

### 187.

**Instead of implicating Harper, Manown's testimony implicated Glock Sr. as "a bad guy" who "bribes people." This angered Renzulli.**

RESPONSE:  The Defendant denies the allegations of Paragraph 187 of the

Complaint, and respectfully refers the Court to the transcript of the proffer for an

accurate and complete statement of its contents.

### 188.

**Upon information and belief, none of the State Actors present at the Manown proffer ever investigated Manown's testimony of Glock Sr.'s criminality.**

RESPONSE:  The Defendant denies that Gaston Glock Sr. engaged in any criminal

activity.  The Defendant lacks the knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of Paragraph 188 and, on that

basis, denies the remaining allegations of Paragraph 188 of the Complaint.

1431853.1

D.     Harper's Investigative Files

## 189.

On August 30, 2007, Smyrna and Harrison obtained three boxes of records of Harper's investigation from a former member of Harper's team as well as a black ring binder labeled "Glock worldwide distributor list," a black ring labeled binder "Examination mission based on agreed upon procedures" and dated 11/8/2000, and a maroon notebook regarding Ewert activities. These binders held information relating to the tax-fraud schemes and also showed work performed by Harper and his team as set out in his bills.

RESPONSE:  The Defendant denies the allegations of Paragraph 189 of the

Complaint, except that the Defendant admits that: (a) a search warrant was

executed on Jerry W. Chapman's home on August 30, 2007; (b) Chapman was a

member of Harper's team; and (c) the City of Smyrna Police Department seized

documents from Chapman's home on August 30, 2007.

## 190.

Smyrna has been unable to return these boxes, records, binders, and notebook.  Upon information and belief, these documents have been tampered, altered with, and/or destroyed by the Enterprise.

RESPONSE:  The Defendant denies the allegations of Paragraph 190 of the

Complaint.

## VII.   THE ENTERPRISE CONSPIRES WITH, DIRECTS, AND CONTROLS STATE ACTORS

## 191.

Through his proxies, Glock Sr. controlled the flow of information from himself and the Glock Structure to Harrison and Butters. Specifically,

1431853.1

**Deichert, Renzulli and Core directed and controlled the criminal prosecution of Harper and Plaintiff.**

RESPONSE: The Defendant denies the allegations of Paragraph 191 of the

Complaint.

### 192.
**The State Actors – Butters and Harrison – entered into a conspiracy with the Enterprise, and became part of the Enterprise for purposes of facilitating an extensive and comprehensive campaign of evidence tampering.**

RESPONSE: The Defendant denies the allegations of Paragraph 192 of the

Complaint.

### 193.
**The State Actors were aware the Enterprise had destroyed key evidence that would compromise any prosecution of Plaintiff. When Harrison became interested in a Glock Inc. wire transfer record from 1997, he was informed by Core as follows: "The records at Glock Inc. were shredded up until 2002 so we don't have Glock Inc. records sending that wire."**

RESPONSE: The Defendant denies the allegations of Paragraph 193 of the

Complaint, and respectfully refers the Court to the June 13, 2011 e-mail referenced

above for an accurate and complete statement of its contents.

### 194.
**Harper's investigation for Glock Sr. continued from 2000 until March 26, 2003. Defendants falsely claimed that Harper's overbilling and billing for services not rendered began in 2000 and that this activity was discovered in May 2003. Evidence exposing these claims as false would have existed in the Glock Inc. records from 2000 through 2002 that were shredded and destroyed.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 194 of the

Complaint.

### 195.

**Those records may also have included Harper's November 1, 2000 Risk Analysis and Letter to Glock Sr. and Glock Inc. These records describe in detail Harper's early discoveries in the investigation and instructions to Glock Sr. including, without limitation, Harper's statement that "[b]ased on the evidence we now have, we must proceed with another mission as well, to protect you [Glock Sr.] and your company from the inevitable counter offensive by Ewert and the possible inquiry by foreign and U.S. officials" and also that "the U.S. government will adopt our explanation of the evidence and stick with it *if we continue to be open and honest*." (Emphasis added.)**

RESPONSE:  Upon information and belief, the Defendant denies the allegation

that Harper sent Glock Sr. and/or Glock, Inc. a November 1, 2000 Risk Analysis or

Letter as alleged in Paragraph 195 of the Complaint and, on that basis, denies the

allegations of Paragraph 195 of the Complaint.

### 196.

**Glock Inc. generated the majority of the revenues of the Glock Structure in the 1999–2001 time period. A portion of these revenues was transferred through the face value tax-fraud schemes as adapted and continued by Glock Sr. and the Glock Structure during this timeframe. False and fraudulent invoices and other records going to and coming from Glock Inc. would have existed as part of these schemes.**

RESPONSE:  The Defendant lacks the knowledge or information sufficient to

form a belief as to the truth of the allegations relative to the "revenues of the Glock

Structure in the 1999–2001 time period" and, on that basis, denies the allegations

1431853.1

77

of the first sentence of Paragraph 196 of the Complaint.  The Defendant denies the

remaining allegations of Paragraph 196 of the Complaint.

**197.**

**Glock Sr. and the Enterprise withheld from Harrison and Butters the extensive records of Harper's investigation that would have: (a) described the terms of Harper's engagement with Glock Sr. and the Glock Structure; (b) supported a defense of the Plaintiff to any criminal prosecution for "overbilling"; (c) implicated Glock Sr. and the Glock Structure in various crimes; and/or (d) supported the work descriptions, time entries, and expenses set out in Harper's bills.**

RESPONSE:  The Defendant denies the allegations of Paragraph 197 of the

Complaint.

**198.**

**Documents withheld (or destroyed) by the Enterprise from the State Actors with the intent of causing injury to the Plaintiff include, without limitation:**

**(a) Harper's Risk Analysis, dated November 1, 2000;**

**(b) Harper's letter to Glock Sr. sent c/o Jannuzzo and dated November 1, 2000;**

**(c) records proving up the Glock Structure scheme involving Consultinvest's purchase of the land and building comprising the Glock Structure's North American headquarters in Smyrna;**

**(d) records proving up Glock Sr.'s complicity in the clone-and-adapt activities to continue the Glock Structure schemes even after Ewert's assassination attempt;**

**(e) the ninety five page PwC First Report, dated October 25, 2002, raising numerous questions about the commercial relationships within the Glock Structure, including the fact that "significant payments were made to external companies whereas there is no clear evidence of services having been rendered by these counterparts;"**

**(f) the twenty page PwC Second Report (draft) detailing the face value tax-fraud schemes, the tracing of proceeds involved in the same, the fact**

PwC's review of marketing costs was based upon information provided by "GG's lawyers," i.e. were the work of Harper and his team, and concluding "the provision of Invoicing Companies [Base Technical, Glock HK, and Glock America in the Glock Structure] had no economic substance but were only driven by tax reasons"; and

(g) numerous e-mails prepared by Plaintiff and copied to Glock Sr.'s attorney in Luxembourg at Glock Sr.'s specific request regarding the activities to defeat Ewert's embezzlement scheme in Curacao and the subsequent uses of this important information.

RESPONSE:  The Defendant denies the allegations of Paragraph 198 of the

Complaint.

## 199.

In addition to concealing the above information and documents, the Enterprise, especially Core, prepared numerous false accountings of Harper's bills by selectively removing certain bills and time periods of bills from the accountings to make it appear that payments exceeded billings on specific dates and during specific time periods.

RESPONSE:  The Defendant denies the allegations of Paragraph 199 of the

Complaint.

## VIII.  INDICTMENT, FALSE ARREST AND RESOLUTION IN FAVOR OF PLAINTIFF

## 200.

From May 2009 through January 2010 Renzulli and Core drafted the Indictment for use by Butters and Officer Harrison.

RESPONSE:  The Defendant denies the allegations of Paragraph 200 of the

Complaint.

1431853.1

**201.**

  **Core, Officer Harrison, and Butters prepared a misleading "chart" for Officer Harrison to use with his grand jury testimony in order to obtain an indictment of Plaintiff. Officer Harrison used this chart as an aid to his false testimony before the grand jury.**

<u>RESPONSE:</u>  The Defendant denies the allegations of Paragraph 201 of the

Complaint.

**202.**

  **On January 22, 2010, armed officers acting in concert with the Enterprise arrested Plaintiff at his home and in front of his wife and young children. Armed officers also arrested Harper.**

<u>RESPONSE:</u>  The Defendant admits in part and denies in part.  The Defendant

admits that Plaintiff and Harper were arrested on January 22, 2010.  The Defendant

lacks any knowledge or information regarding who was present at Plaintiff's arrest,

and on that basis denies the allegations regarding the circumstances of that arrest.

The Defendant denies the remaining allegations of Paragraph 202 of the

Complaint.

**203.**

  **Plaintiff was named as a co-defendant in three of the ten false and fabricated Counts and a conspiracy Count.**

<u>RESPONSE:</u>  The Defendant admits in part and denies in part.  The Defendant

admits that Plaintiff was named as a co-defendant.  The Defendant denies that the

counts were false or fabricated and denies any remaining allegations in Paragraph

203 of the Complaint.

**204.**

**All of the charges against Plaintiff were fabricated based on the falsified evidence, influenced witnesses, evidence either destroyed or withheld by the Glock Structure and Enterprise, and misleading statements of Glock, Sr. and Defendants along with those of Harrison and Butters, including, without limitation:**

**(a) falsified records of the terms of Harper's engagement with Glock Sr. and the Glock Structure;**

**(b) selective review of Harper's bills and payments against these bills; and**

**(c) double-counting funds paid against Harper's bills as Glock Structure money.**

RESPONSE:  The Defendant denies the allegations of Paragraph 204 of the

Complaint.

**205.**

**In November 2012, the voters of Cobb County, Georgia elected a new District Attorney.**

RESPONSE:  The Defendant admits the allegations of Paragraph 205 of the

Complaint.

**206.**

**On March 14, 2013, the new Cobb County D.A. dropped all charges against Harper and Plaintiff.**

RESPONSE:  The Defendant admits in part and denies in part.  The Defendant

admits that the Cobb County Superior Court entered a *nolle prosequi* on March 14,

2013 and the *nolle prosequi* speaks for itself.  The Defendant lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 206 and, on that basis, denies the remaining allegations contained in Paragraph 206 of the Complaint.

## IX.   PLAINTIFF'S EVIDENCE OF ENTERPRISE CONSPIRACY WITH STATE ACTORS BUTTERS AND OFFICER HARRISON FOR PURPOSES OF EVIDENCE- AND WITNESS-TAMPERING

### 207.

**In conspiracy with the Enterprise, Butters and Officer Harrison concealed and withheld dozens of e-mails, attachments, and records from Harper and Plaintiff while they were under indictment including, without limitation:**

**(a) a copy of an exculpatory e-mail from Harper to a Panamanian lawyer who assisted on the Panama Operation in which Harper, in 2003, instructed the Panamanian lawyer to "share everything with Glock if they ask";**

**(b) records showing the transfer to Glock  Sr., Defendants, the Glock Structure, and the Enterprise from the evidence room of the Smyrna Police Department of three boxes of records  of Harper's investigation as well as a black ring binder labeled "Glock worldwide distributor list," a black ring binder labeled "Examination mission based on agreed upon procedures" and dated 11/8/2000 and a maroon notebook regarding Ewert activities, all of which were material  documents that have not been accounted for since and, upon information and belief, were destroyed by the Enterprise  for the purposes  of prejudicing  Plaintiffs  defense and/or protecting the Glock Structure;**

**(c) dozens of communications between Core, Harrison and Butters showing the following:**

**(i) Core's instructions to Harrison and Butters to obtain and transfer to Core and the Enterprise records obtainable only under color of state law;**

(ii) Officer Harrison and Butters' compliance with these instructions; and

(iii) Core's unsupervised access to, and control over, these records. Upon information and belief, some of these records have not been accounted for since and, upon information and belief, were destroyed by the Enterprise with the intent of prejudicing Plaintiffs defense;

(d) a June 9, 2008 e-mail in which Core suggested to Butters and Harrison the charges against Plaintiff were weak ("I don't think we will wind up wanting to charge [Plaintiff]"), approximately eighteen (18) months before the Enterprise obtained the indictment of Plaintiff;

(e) Core's e-mail dated March 21, 2011 to Butters, Harrison, and the State's supposed expert witness against Plaintiff expressing worry that wire transfer payments for work performed by the Harper team "line[d] up with the bills" and that Core's own accountings suggested the alleged "over billings" were cancelled out by "under billings";

(f) Core's instructions via e-mail to Butters and Harrison on how to prepare the State"s supposed expert witness against Plaintiff in which Core directed Butters and Officer Harrison to instruct the expert against mentioning Core's role in his preparation but, if directly asked, that the witness "should just state that [Core is] Glock counsel and ha[s] been working with you. No more than that." Further, Core instructed Butters and Harrison the expert witness should not divulge "any communications with me, you, or Keith" [Harrison] because such communications were "work product and attorney client privileged";

(g) e-mail suggesting the extent of the State Actors' complicity in influencing witnesses and tampering with evidence, to wit: Core's e-mail to Butters demanding Butters obtain and share with Core the tax returns of a witness and former member of Harper's investigative team, Paul Phelan, so he could "break" him after Phelan made statements favorable to Harper and Plaintiff's defense during an interview with Officer Harrison;

(h) Officer Harrison and Core's e-mail exchanges on May 15, 2009 regarding Harrison's admission that he left files "at the plant" and is looking for "Pombert's physical file" and "bank records" because he "can't find" them (upon information and belief, the "plant" is code for Glock's  corporate offices in Smyrna);

(i) an e-mail by Core to Butters, Officer Harrison, and the State's expert witness that attached a "witness spread sheet" file in which Core tells them

**"This will be our trial guide," evincing the control exercised by Core and the Enterprise over the State Actors and the malicious prosecution of the Plaintiff;**

**(j) Core's e-mail dated September 2, 2010 containing instructions on how the State Actors should conduct a potential proffer of Plaintiff;**

**(k) an e-mail by Core to Butters and Officer Harrison dated December 10, 2009 stating that Mathis, a witness, "completely understands the case, to include those acts he did previously did not know about" and that Core "is no longer concerned, but I would still like to downplay the 'witness' label. Almost all of his income is now derived from Glock, therefore he will always come when directed";**

**(l) e-mails showing the Enterprise, not Butters or Officer Harrison, were controlling the production of documents in the criminal prosecution of Harper and Plaintiff, including discussions of "somehow lost" documents not included in an earlier document production to Plaintiff;**

**(m) numerous Core e-mails to Butters and Officer Harrison showing that Core was selecting the records the Enterprise wanted in the State's  files and that Core was interviewing witnesses the State Actors never interviewed and instructing witnesses to interview other witnesses;**

**(n) e-mail in which Core demanded Officer Harrison circulate to him a transcription of a witness interview, ending "Gimmee, gimmee ...";**

**(o) numerous e-mails from Core to Butters and Harrison revealing Core's many guesses at "facts" and subsequent admissions these theories were incorrect and/or unsupported by any evidence;**

**(p) numerous accountings prepared by Core and delivered to Officer Harrison and Butters revealing the selective use of Harper's bills and payments to create false and fictitious "overbillings"; and**

**(q) numerous e-mails and attachments during the period May 2009 and January 2010 prepared by Core and sent to Butters and Officer Harrison discussing drafts of the Indictment against Harper and Plaintiff and attaching drafts of the Indictment.**

RESPONSE:  The Defendant denies the allegations of Paragraph 207 of the

Complaint.

1431853.1

**208.**

The above evidence of ongoing, deliberate, and coordinated evidence tampering, witness influencing, and malicious prosecution was only obtained subsequent to the *nolle prosequi* of Harper and Plaintiff through requests for documents under Georgia's Open Records Act. These documents were not disclosed by the State Actors or the Enterprise during the actual criminal prosecution of Harper and Plaintiff notwithstanding a legal (and constitutional) duty to do so and no bona fide claim of "attorney-client privilege" sometimes bogusly claimed in e-mails amongst the conspirators.

RESPONSE:  The Defendant denies the allegations of Paragraph 208 of the

Complaint.

## X.     RESPONDEAT SUPERIOR

**209.**

At all relevant times, the Enterprise was acting within the scope of its employment for and as the agents of Defendants.

RESPONSE:  The Defendant denies the allegations of Paragraph 209 of the

Complaint.

**210.**

Defendants are liable to Plaintiff, jointly and severally, under the principle of respondeat superior for any damages arising out of the acts undertaken and committed against Plaintiff by agents named as the Enterprise who were under their employ and/or control and where acting in their name and on their behalf.

RESPONSE:  The Defendant denies the allegations of Paragraph 210 of the

Complaint.

1431853.1

## COUNT ONE:
## CONSPIRACY FOR VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

### 211.

**Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-210 as if fully restated hereinafter.**

RESPONSE:  The Defendant repeats, reiterates, and realleges each and every

response to the Plaintiff's Complaint contained in Paragraphs 1–210 with the same

force and effect as if set forth herein.

### 212.

**A common understanding existed between the State Actors and the Enterprise, forming an unlawful conspiracy with said State Actors to deprive Plaintiff of his constitutional rights under color of state law.**

RESPONSE:  The Defendant denies the allegations of Paragraph 212 of the

Complaint.

### 213.

**Beginning in or around June 21, 2007 and continuing through on or about March 15, 2013, in Cobb County, Defendants, Glock Sr., the Glock Structure, and the Enterprise formed a common understanding with the State Actors (Officer Harrison and Butters) to take certain unlawful and improper actions such that the State Actors, under color of state law, would target Plaintiff in order to deprive him of his rights under the United States Constitution.**

RESPONSE:  The Defendant denies the allegations of Paragraph 213 of the

Complaint.

1431853.1

### 214.

The Enterprise, together with the State Actors, entered into a conspiracy that, acting in concert, agreed to commit unlawful acts and by unlawful means to inflict injury upon Plaintiff. The Enterprise committed overt acts resulting in damage to Plaintiff with the purpose of furthering the Enterprise's goals of injuring him.

RESPONSE:  The Defendant denies the allegations of Paragraph 214 of the

Complaint.

### 215.

The object of this conspiracy was to violate the constitutional rights of Plaintiff to be secure in his person, house, papers, and effects, against unreasonable searches and seizures, to violate the right of the people that no Warrants shall issue, but upon probable cause, to violate Plaintiffs right to due process of law under the Fourteenth Amendment, to violate his right to be tried upon evidence that is unmanipulated, and to violate his right to be tried using witnesses that are uninfluenced by improper means.

RESPONSE:  The Defendant denies the allegations of Paragraph 215 of the

Complaint.

### 216.

The Enterprise controlled, directed, intertwined, and intermingled themselves with State Actors who were clothed with state authority to investigate and prosecute crimes. This control and intertwined relationship was such that, although the Enterprise was composed of private individuals or entities, the acts of the State Actors were fairly chargeable to the Enterprise as if they were agent and principal.

RESPONSE:  The Defendant denies the allegations of Paragraph 216 of the

Complaint.

1431853.1

**217.**

Officer Harrison and Butters were at all relevant times public officials, state actors, and employees of Smyrna and the Cobb County District Attorney's office, respectively, acting in concert with and under the control of and at the direction of Defendants, Glock Sr., the Glock Structure, and the Enterprise.

RESPONSE:  The Defendant denies the allegations of Paragraph 217 of the

Complaint.

**218.**

Although Defendants, Glock Sr., the Glock Structure, and the Enterprise were ostensibly private actors themselves, they were at all relevant times engaged in state action or in conduct that is fairly attributable to the State (and vice versa) in that: (1) the deprivation of Plaintiff's civil rights depended upon a common understanding and conspiracy with the State Actors and was executed through procedures or authority of the State or by a person for whom the State is responsible such that the above-named Defendants can fairly be said to have deprived Plaintiff of his constitutional rights under color of state law.

RESPONSE:  The Defendant denies the allegations of Paragraph 218 of the

Complaint.

**219.**

Defendants, Glock Sr., and the Enterprise, together with the Glock Structure, caused a criminal prosecution to be instituted and continued against Plaintiff with malice and without probable cause.

RESPONSE:  The Defendant denies the allegations of Paragraph 219 of the

Complaint.

**220.**

The criminal prosecution terminated in favor of Plaintiff.

RESPONSE:  The Defendant denies the allegations of Paragraph 220 of the

Complaint.

**221.**

**As a direct and proximate result, Plaintiff suffered damages including, without limitation, personal injury, pain, outrage, public humiliation, shame and anxiety, loss of time from work, and injury to his peace, happiness, and feelings, damage to his reputation and professional livelihood, lost earning capacity, and attorney fees paid to defend against the underlying criminal prosecution and investigation of this case.**

RESPONSE:  The Defendant denies the allegations of Paragraph 221 of the

Complaint.

**COUNT TWO:**
**State Law Claim For Malicious Arrest And Prosecution**

**222.**

**Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-221 as if fully restated hereinafter.**

RESPONSE:  The Defendant repeats, reiterates, and realleges each and every

response to the Plaintiff's Complaint contained in Paragraphs 1–221 with the same

force and effect as if set forth herein.

**223.**

**With malice but without probable cause, the Defendants caused a criminal prosecution to be instituted or continued against Plaintiff.**

RESPONSE:  The Defendant denies the allegations of Paragraph 223 of the

Complaint.

1431853.1

89

**224.**

**The criminal prosecution terminated in favor of Plaintiff.**

RESPONSE:  The Defendant denies the allegations of Paragraph 224 of the

Complaint.

**225.**

**As a direct and proximate result, Plaintiff suffered damages including, without limitation, shame, humiliation, anxiety, personal injuries, loss of time from work, diminished earning capacity in his profession, embarrassment, costs of legal defense and investigation expenses, and attorney's fees paid in the investigation and pursuit of this action.**

RESPONSE:  The Defendant denies the allegations of Paragraph 225 of the

Complaint.

**COUNT THREE:**
**O.C.G.A. § 16-14-4(A)**

**226.**

**Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-225 as if fully restated hereinafter.**

RESPONSE:  The Defendant repeats, reiterates, and realleges each and every

response to the Plaintiff's Complaint contained in Paragraphs 1–225 with the same

force and effect as if set forth herein.

**227.**

**The Enterprise Defendants engaged in an ongoing pattern of racketeering activity as defined by Georgia RICO, O.C.G.A. § 16-14-3(8).**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 227 of the

Complaint.

## 228.

**The members of the Enterprise were acting within the scope of their employment for, and as the agents of, Defendants.**

RESPONSE:  The Defendant denies the allegations of Paragraph 228 of the

Complaint.

## 229.

**The Georgia RICO pattern of racketeering activity engaged in by the Enterprise and Defendants consists of more than two acts of racketeering activity that were ongoing, coordinated, and bent towards a common modus operandi and objective.**

RESPONSE:  The Defendant denies the allegations of Paragraph 229 of the

Complaint.

## 230.

**It was part of the conspiracy that some of the Enterprise, aided and abetted by each other and the State Actors, would knowingly and willfully falsify documents to conceal or cover up that Harper's bills reflected the rates and terms of his engagement for his investigation, that Harper billed as agreed, that Harper earned all of the fees that he was paid, and that he was owed a substantial sum of money for services rendered when he quit the investigation.**

RESPONSE:  The Defendant denies the allegations of Paragraph 230 of the

Complaint.

**231.**

It was further part of the conspiracy that some of the coconspirators, aided and abetted by each other, would make false, fictitious, or fraudulent statements or representations about Harper's services, Harper's bills for these services, and payments received by Harper against his bills for the investigation.

RESPONSE:  The Defendant denies the allegations of Paragraph 231 of the

Complaint.

**232.**

It was further part of the conspiracy that some of the Enterprise, aided and abetted by each other and the State Actors: would (i) communicate with witnesses threats of injury or damage to the person, property, or employment of the witnesses, or would offer or deliver a benefit, reward, or consideration to such witnesses, with intent to deter witnesses from testifying freely, fully, and truthfully before the grand jury and in the criminal proceedings pending against Harper and Plaintiff in the Cobb County Superior Court, and (ii) knowingly use intimidation, physical force, or threats in misleading conduct toward another person with intent to influence, delay, or prevent the testimony of persons before the grand jury and in the criminal proceedings pending against Harper and Plaintiff in the Cobb County Superior Court.

RESPONSE:  The Defendant denies the allegations of Paragraph 232 of the

Complaint.

**233.**

It was further part of the conspiracy that some of the Enterprise, aided and abetted by each other and the State Actors, would tamper with evidence with the intent:

(a) to prevent the apprehension of Glock Sr., members of the Glock Structure and others;

(b) to cause the wrongful apprehension of Plaintiff;

(c) to obstruct the prosecution of Glock Sr., the Glock Structure and others; and

1431853.1

**(d) to obstruct the defense of Plaintiff by knowingly destroying, altering, concealing, or disguising physical evidence or making, devising, preparing, or planting false evidence.**

RESPONSE:  The Defendant denies the allegations of Paragraph 233 of the

Complaint.

## 234.

**It was further part of the conspiracy that some of the Enterprise, aided and abetted by each other and the State Actors, would plot to discredit, punish, falsely arrest, and falsely imprison Plaintiff.**

RESPONSE:  The Defendant denies the allegations of Paragraph 234 of the

Complaint.

## 235.

**It was further part of the conspiracy that some of the Enterprise, aided and abetted by each other and the State Actors, would:**

**(a) review and selectively extract documents from the books and records of Defendants, Glock Sr., and the Glock Structure as well as from the records of Harper and Plaintiff;**

**(b) meet with and supply false, misleading and incomplete information to the State Actors;**

**(c) withhold or destroy exculpatory evidence in order to prejudice the defense of Plaintiff;**

**(d) commit perjury;**

**(e) seize records of Harper's  investigation, confidential tax returns, bank statements and other records of Plaintiff and others;**

**(f) tamper with witnesses;**

**(g) tamper with evidence including, without limitation, knowingly falsify chain of custody and other official records and court filings, and knowingly withhold exculpatory evidence; and/or**

**(h) falsely swear in affidavits signed in support of warrants for the seizure of records.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 235 of the

Complaint.

**236.**

**It was further part of the conspiracy that some of the Enterprise, aided and abetted by each other and the State Actors, would maliciously prosecute Plaintiff in violation of his Fourth Amendment and Fourteenth Amendment rights.**

RESPONSE:  The Defendant denies the allegations of Paragraph 236 of the

Complaint.

**237.**

**Defendants, Glock Sr., the Glock Structure, and the Enterprise engaged in a pattern of racketeering activity, to wit:**

**(a) tampering with evidence with the intent of causing the wrongful apprehension of the Plaintiff and obstructing the defense of the Plaintiff, a crime under O.C.G.A. § 16-10-94(a) and predicate act under Georgia's RICO law, by knowingly destroying, altering, concealing and/or disguising physical evidence and/or making, devising, preparing or planting false evidence;**

**(b) threatening or causing physical or economic harm to another person or attempting to cause physical or economic harm to another person with the intent to hinder, delay, prevent or dissuade any person from:**

**(i) attending or testifying in an official proceeding;**

**(ii) reporting in good faith to law enforcement the commission of an offense under the laws of this state; and/or**

**(iii) causing a criminal prosecution to be sought or instituted or assisting in such prosecution or proceeding, any of which is a crime under O.C.G.A. § 16-10-32(b) and predicate act under Georgia's  RICO law;**

**(c) using intimidation, physical force, threats, corrupt means or misleading conduct with intent to influence, delay, or prevent the testimony of any person in an official proceeding, a crime under O.C.G.A. § 16-10-93(b)(l)(A) and predicate act under Georgia's RICO law;**

**(d) using intimidation, physical force, threats, corrupt means or misleading conduct with intent to cause or induce any person to withhold testimony or a record, document, or other object from an official proceeding, a crime under O.C.G.A. § 16-10-93(b)(l)(B)(i) and predicate act under Georgia's RICO law;**

**(e) using intimidation, physical force, threats, corrupt means or misleading conduct with intent to cause or induce any person to alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding, a crime under O.C.G.A. § 16-10-93(b)(l)(B)(ii) and predicate act under Georgia's RICO law;**

RESPONSE:  The Defendant denies the allegations of Paragraph 237 of the

Complaint.

### 238.

**It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money. O.C.G.A. § 16-14-4(a).**

RESPONSE:  Paragraph 238 asserts legal conclusions to which no response is

required.  To the extent a response is required, the Defendant denies the allegations

of Paragraph 238 of the Complaint.

### 239.

**Defendants acquired and maintained an interest in, and control over property, including money, through a pattern of racketeering activity.**

RESPONSE:  The Defendant denies the allegations of Paragraph 239 of the

Complaint.

**240.**

Plaintiff has been injured by reason of the above-named Defendants' violation of O.C.G.A. § 16-14-4(a) and is entitled to recover three times the actual damages sustained.

RESPONSE:  The Defendant denies the allegations of Paragraph 240 of the

Complaint.

**241.**

The above-named Defendants' violations of Georgia RICO proximately caused injury to Plaintiff. As a direct result of these violations, Plaintiff has suffered injury, inter alia, to his person, property, professional livelihood, reputation, and mental well being.

RESPONSE:  The Defendant denies the allegations of Paragraph 241 of the

Complaint.

**COUNT FOUR:**
**O.C.G.A. § 16-14-4(B)**

**242.**

Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-241 as if fully restated hereinafter.

RESPONSE:  The Defendant repeats, reiterates, and realleges each and every

response to the Plaintiff's Complaint contained in Paragraphs 1–241 with the same

force and effect as if set forth herein.

**243.**

It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, an enterprise through a pattern of racketeering activity. O.C.G.A. § 16-14-4(b).

1431853.1

RESPONSE:  Because Count IV has been dismissed and because Paragraph 243

states a conclusion of law, no response is required.  To the extent any response is

required, Defendant denies the allegations of Paragraph 243 of the Complaint.

**244.**

> **The above-named Defendants were employed by or associated with an enterprise and did conduct or participate in, directly or indirectly, an enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b).**

RESPONSE:  The Defendant denies the allegations of Paragraph 244 of the

Complaint.

**245.**

> **Plaintiff has been injured by reason of the above-named Defendants' violation of O.C.G.A. § 16-14-4(b) and is entitled to recover three times the actual damages sustained.**

RESPONSE:  The Defendant denies the allegations of Paragraph 245 of the

Complaint.

**246.**

> **The above-named Defendants' violations of Georgia RICO proximately caused injury to Plaintiff.  As a direct result of these violations, Plaintiff has suffered injury, inter alia, to his person, property, professional livelihood, reputation, and mental well being.**

RESPONSE:  The Defendant denies the allegations of Paragraph 246 of the

Complaint.

## COUNT FIVE:
## O.C.G.A. § 16-14-4(C)

### 247.

**Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-246 as if fully restated hereinafter.**

RESPONSE:  The Defendant repeats, reiterates, and realleges each and every

response to the Plaintiff's Complaint contained in Paragraphs 1–246 with the same

force and effect as if set forth herein.

### 248.

**It is unlawful for any person to conspire or endeavor to violate any of the provisions of Georgia's RICO law, either subsection (a) or (b) of O.C.G.A. § 16-14-4.**

RESPONSE:  Because Count V has been dismissed and because Paragraph 248

states a conclusion of law, no response is required.  To the extent a response is

required, Defendant denies the allegations of Paragraph 248 of the Complaint.

### 249.

**The above-named Defendants conspired amongst themselves, the State Actors and perhaps others, known and unknown, to violate subsections (a) and/or (b) of O.C.G.A. § 16-14-4, Georgia's RICO law.**

RESPONSE:  The Defendant denies the allegations of Paragraph 249 of the

Complaint.

### 250.

**The above-named Defendants committed overt acts in furtherance of the conspiracy.**

1431853.1

RESPONSE:  The Defendant denies the allegations of Paragraph 250 of the

Complaint.

## 251.

**Plaintiff has been injured by reason of the above-named Defendants' violation of O.C.G.A. § 16-14-4(c) and is entitled to recover three times the actual damages sustained.**

RESPONSE:  The Defendant denies the allegations of Paragraph 251 of the

Complaint.

## 252.

**The above-named Defendants' violations of Georgia RICO proximately caused injury to Plaintiff. As a direct result of these violations, Plaintiff has suffered injury, inter alia, to his person, property, professional livelihood, reputation, and mental well being.**

RESPONSE:  The Defendant denies the allegations of Paragraph 252 of the

Complaint.

## COUNT SIX:
## PUNITIVE DAMAGES

## 253.

**Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1-252 as if fully restated hereinafter.**

RESPONSE:  The Defendant repeats, reiterates, and realleges each and every

response to the Plaintiff's Complaint contained in Paragraphs 1–252 with the same

force and effect as if set forth herein.

1431853.1

**254.**

    **Plaintiff is entitled to punitive damages to penalize, punish, or deter Defendants.**

RESPONSE:  The Defendant denies the allegations of Paragraph 254 of the

Complaint.

**255.**

    **The above-described actions showed willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff to receive punitive damages sufficient to deter, penalize, or punish Defendants.**

RESPONSE:  The Defendant denies the allegations of Paragraph 255 of the

Complaint.

**256.**

    **Said actions of Defendants were calculated with the specific intent to cause harm to Plaintiff such that, under O.C.G.A. § 51-12-5.1(f), there is no cap on the amount of punitive damages that may be awarded.**

RESPONSE:  The Defendant denies the allegations of Paragraph 256.

**PRAYER FOR RELIEF**

    **WHEREFORE, Plaintiff asks for a Judgment and other relief as follows:**
        **(a) Judgment in an amount equal to three times the actual damages sustained and punitive damages, pursuant to O.C.G.A. § 16-14-6(c);**
        **(b) That the Judgment against these Defendants be joint and several;**
        **(c) Attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred, pursuant to the laws of**

1431853.1

**Georgia and federal law, including but not limited to, O.C.G.A. § 16-14-6(c) and 42 U.S.C. § 1988;**

**(d) Pre-judgment and post-judgment interest as provided by law;**

**(e) Plaintiff is an "aggrieved person" within the meaning of O.C.G.A. § 16-14-6(b). As a result, Plaintiff may be entitled to appropriate preliminary and permanent injunctive relief;**

**(f) Pursuant to O.C.G.A. § 16-14-6(a), Plaintiff asks the Court to issue appropriate orders   and judgment requiring the above-named Defendants to cease their illegal conduct and imposing reasonable restrictions upon their future activities sufficient to prohibit future violations of the law;**

**(g) Judgment ordering the dissolution or reorganization of Glock Inc. and/or Consultinvest, pursuant to O.C.G.A. § 16-14-6(a)(3);**

**(h) Judgment ordering the suspension or revocation of any license, permit, or prior approval granted by any agency of the state, pursuant to O.C.G.A. § 16-14-6(a)(4);**

**(i) Judgment ordering the forfeiture of the charter of Glock Inc. and/or Consultinvest, corporations organized under the laws of Georgia, pursuant to O.C.G.A. § 16-14-6(a)(5);**

**(j) Trial by jury; and**

**(k) Such other relief as the Court deems just and proper.**

RESPONSE:  The Defendant denies the allegations of the Complaint's Prayer for

Relief and denies that Plaintiff is entitled to any relief whatsoever.

## **RESIDUAL DENIAL**

Defendant denies each and every one of Plaintiff's allegations unless they

have been specifically admitted herein.

**WHEREFORE**, having answered fully, the Defendant Consultinvest, Inc.

hereby prays:

a)  That judgment be entered in favor of Consultinvest, Inc.;

1431853.1

101

b) That Consultinvest, Inc. be discharged from this case without liability and that the costs of this case be cast upon Plaintiff;

c) That Consultinvest, Inc. be given a trial by jury as to all proper issues in this case; and

d) That the Court grant Consultinvest, Inc. such other and further relief as may be just and proper.

This 29th day of April, 2015,

Respectfully submitted:

*/s/ Ronan P. Doherty*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Ronan P. Doherty
Georgia Bar No. 224885
doherty@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com
Amanda Seals Bersinger
Georgia Bar No. 502720
bersinger@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel. (404) 881-4100
Fax (404) 881-4111
*Attorneys for Defendant Consultinvest, Inc.*

1431853.1

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on April 29, 2016, I electronically filed the foregoing

**ANSWER AND DEFENSES OF DEFENDANT CONSULTINVEST, INC.** via

the CM/ECF electronic filing system, which will automatically send e-mail

notification of such filing to all counsel of record.

*/s/      Ronan P. Doherty*

1431853.1